APPEALS OF HENRY F. McCREERY; ANNIE L. PURCELL, EXECUTRIX, ESTATE OF JOSEPH PURCELL; THEODOSIA JOHNSON, EXECUTRIX, ESTATE OF JOHN E. JOHNSON, JR.; JEANNE EDMONDS, EXECUTRIX, ESTATE OF JOHN W. EDMONDS.

Docket Nos. 3557, 3838, 3839, 3940. Decided September 23, 1926.

1. Upon the evidence, *held,* that the sale by a partnership, composed of the petitioners, of its businesses, including its tangible and intangible assets, was a single transaction and the gain or loss upon the sale of the good will may not be computed separately.

2. On April 30, 1919, the partnership sold its entire businesses and assets on hand at that date for $6,093,284.34. The net earnings of the partnership for the period from January 1 to April 30, 1919, amounted to $1,397,256.09, and this amount was included in the assets sold on the last-mentioned date. The Commissioner held that the partners' distributive shares of the $1,397,256.09 constituted income taxable to them for 1919, and in determining the gain or loss to the partnership upon the sale of its businesses and assets, included the $1,397,256.09 as a part of the cost of the assets sold. *Approved.*

*Sanford Robinson, Esq.,* and *Truman Henson, Esq.,* for the petitioners.

*M. N. Fisher, Esq.,* for the Commissioner.

The four above-entitled appeals came on for hearing, and, it appearing that the facts and the issues involved in each appeal were identically the same except as to the amounts of the deficiencies, the hearings were consolidated by agreement of counsel. The Commissioner has asserted deficiencies in taxes, for the taxable year 1919, against the several petitioners named in the appeals as follows:

| | |
|---|---|
| Henry F. McCreery | $68,577.17 |
| Annie L. Purcell, Executrix, Estate of Joseph Purcell | 59,077.37 |
| Theodosia Johnson, Executrix, Estate of John E. Johnson, Jr. | 54,645.19 |
| Jeanne Edmonds, Executrix, Estate of John W. Edmonds | 23,836.24 |

The issues presented by these appeals concern the Commissioner's action (1) in treating the transaction involving the sale of the partnership assets and businesses as severable into two parts—computing the loss and gain on the good will and the tangibles separately, and in refusing to allow a loss of $1,500,000 alleged to have been sustained upon the sale of the good will as an offset against the gain arising from the sale of the tangible assets; (2) in failing to take into consideration, for the purpose of computing the gain or loss resulting from the sale of the partnership assets and businesses, the March 1, 1913, value of certain of those assets which were acquired prior to that date; (3) in holding that the sale of the partnership assets and businesses constituted a closed and completed transaction for the year 1919; and (4) in holding that the earnings of the partnership for the period January 1 to April 30, 1919, should be included in the net income of the partnership in respect of which the petitioners are liable for income tax for the year 1919, according to their respective distributive shares therein.

### FINDINGS OF FACT.

Petitioners are citizens of the United States and residents of the State of New York. Under date of October 24, 1918, Henry F. McCreery, Joseph Purcell, John E. Johnson, Jr., John W. Edmonds, and William F. Hartranft entered into an agreement of co-partnership to carry on the business of shipping, importing, and dealing in coffee and other articles generally handled by wholesale grocers, and brokerage, under the firm name and style of Hard and Rand, for the period beginning January 1, 1919, and continuing until January 1, 1922, and thereafter from year to year until terminated as therein provided. These same persons were members of the firm of Hard, Rand and Co., a co-partnership constituted under the laws of the Republic of Brazil. The interests of each were identical in both firms, and were as follows:

|  | Percentage |
|---|---|
| Henry F. McCreery | 26 |
| Joseph Purcell | 26 |
| John E. Johnson, Jr | 18 |
| John W. Edmonds | 12 |
| William F. Hartranft | 18 |

Joseph Purcell died on October 23, 1919, John E. Johnson, Jr.. died on March 23, 1922; and John W. Edmonds died on August 26, 1923. Article XIV of the partnership agreement provided, with respect to the termination of the partnership by death of one of the members, as follows:

In the event of the death of any partner, his interest and the interest of his estate in the business shall not cease until the end of the current fiscal year on the 31st day of the following December  *  *  *.

The business to which this partnership succeeded was first established in or about the year 1875 and thereafter was carried on by several successor partnerships, all bearing the same firm name and style of Hard and Rand. The business was successful from the start. Commencing with a capital of approximately $100,000 in 1875 the business continued to grow until at the time of the sale in 1919, hereinafter referred to, the capital employed exceeded $5,000,000. All of the partners had grown up in the business, which had become world wide, with valuable agencies and connections in all of the principal foreign countries. The net earnings, the average tangible capital employed in the business, and the percentage of return those earnings represent upon the tangible capital, for the five fiscal years ended April 30, 1912, are as follows:

| Fiscal year ended Apr. 30 | Earnings | Tangibles | Return, per cent |
|---|---|---|---|
| 1908 | $487, 049. 40 | $1, 255, 981. 06 | 38. 77 |
| 1909 | 661, 292. 82 | 1, 412, 888. 71 | 46. 80 |
| 1910 | 218, 757. 41 | 1, 749, 122. 41 | 12. 51 |
| 1911 | 180, 398. 81 | 1, 667, 621. 44 | 10. 82 |
| 1912 | 388, 005. 44 | 1, 561, 875. 48 | 24. 84 |
| Average | 387, 100. 78 | 1, 529, 497. 82 | 25. 31 |

During the fiscal years 1908 to 1912, inclusive, there were six partners, and the fair and reasonable salary to each partner for services rendered was $8,000 per annum. The average annual earnings for the above five-year period, after deducting the sum of $48,000 per annum for partners' salaries, was $339,100.78, which amount represented an average annual return of 22.17 per cent on the tangible capital employed in the business.

Under date of May 1, 1919, the partners entered into an agreement with the Mercantile Oversea Corporation to sell to that corporation—

* * * their entire businesses and all appurtenances including the firm name, goodwill, and all corporations owned by them, and all the assets, except the following:

Proceeds of coffee in British Prize Courts valued April 30, 1918 at $340,064.66

Amounts in the hands of agents of the Vendors at Genoa, Italy, (approximately 6,000,000 liras)

About 4500 bags of coffee held unsold in Genoa, Italy.

So far as pertinent to the subject matter under inquiry the provisions of the sale agreement are quoted below:

FIRST: The Vendors hereby sell, assign and transfer to the Purchaser said entire businesses, including goodwill and firm name, and all assets, except those above specifically excluded, and the Purchaser hereby accepts and purchases the same and assumes all the liabilities of said Vendors appearing upon their

books as of April 30, 1919, subject to the above representations of the Vendors as to the extent of said liabilities. * * *

SECOND: For the purpose of giving effect to the foregoing, the Vendors shall forthwith place the Purchaser in possession of said businesses and of all their offices; but the Vendors hereby agree that subject to the instructions of the Purchaser, they, or such of them as the Purchaser may request so to do, will continue to conduct or assist in the conduct of said business for the account of the Purchaser during such period not exceeding six months from April 30, 1919, as the Purchaser may determine. Each of the said Vendors so employed by the Purchaser as aforesaid, shall be compensated at the rate of $8,000 per annum during the period of his actual employment.

* * * * * * *

FOURTH: For the purpose of making effective the sale herein provided of the assets and businesses of the Vendors, the Vendors shall, as and when required by the Purchaser or its assigns or nominees, make, execute, and deliver, or cause to be made, executed and delivered to the Purchaser or its assigns or nominees, such bills of sale, deeds of conveyance, and/or other instruments of transfer, and in such form as the Purchaser shall require * * *.

FIFTH: The price to be paid by the Purchaser, or its assigns or nominees, for the businesses and assets aforesaid, shall be as follows:

(a) For the goodwills of said businesses, the sum of Two hundred and fifty thousand dollars ($250,000), and

(b) For the assets sold as aforesaid, an amount equal to the value of such assets on April 30, 1919, over and above the liabilities of the Vendors on said date, as those values and liabilities appear on the books of the Vendors as of said date:

For this purpose, a full and correct inventory as of said date shall be prepared by the Vendors as soon as may reasonably be possible, such inventory to be in the same general form and upon the same conservative basis as has heretofore been observed by the Vendors in the preparation of their annual inventories and balance sheets.

SIXTH: The purchase price above mentioned shall be payable as follows:

(a) The $250,000 above mentioned representing the price to be paid for the goodwills of said businesses shall be paid in four equal annual instalments of $62,500 each, commencing April 30, 1920, with interest at 6% from May 1, 1919;

(b) A further sum to be paid forthwith upon the execution and delivery of this agreement by the retransfer and redelivery to the Vendors of the items inventoried under the following headings:

> Investment Account
> Atlantic Mutual Insurance Co. scrip
> Liberty Loans
> United States Certificates of Indebtedness

The Vendors agree to accept the above in part payment of the purchase price at the inventoried values thereof as of April 30, 1919;

(c) The balance, that is to say, th balance of the value of the assets transferred as of April 30, 1919, over and above the liabilities on that date as aforesaid shall be paid in cash within six months after the transfers herein provided shall have been completed, and the correctness of the inventories and balance sheets to be prepared by the Vendors as aforesaid shall have been verified to the satisfaction of the Purchaser. * * *

By supplemental agreement of May 20, 1919, the vendors reserved and excepted from the assets agreed to be sold Liberty bonds of the fourth issue, to an amount at par of $200,000. A further supplemental agreement was entered into under date of November 24, 1920, the pertinent provisions of which are as follows:

WHEREAS, payment has been made of part of the purchase price as provided in sub-division (b) of Article Sixth of said May 1st, 1919, agreement; and

WHEREAS, the amount of the balance of the purchase price, including the sum payable for the goodwill has now been determined and agreed upon; and

WHEREAS, the parties hereto desire to make new arrangements with reference to payment thereof and also to provide for the continuance of the conduct of said business by the Vendors pending such payments.

Now, THEREFORE, the parties hereto covenant and agree to and with each other as follows:

FIRST: The balance of the purchase price payable under the provisions of the above mentioned agreement of May 1st, 1919, including the amount to be paid for goodwill under said agreement, is hereby agreed upon and fixed at the sum of $5,242,422.46, on account of which there has been paid to the Vendors through withdrawals in accordance with the above mentioned agreement of May 1st, 1919, the sum of $1,569,724.31; leaving unpaid a balance of $3,672,698.15 as well as interest from April 30th, 1919, which interest, calculated to November 1st, 1920, is hereby agreed upon and fixed at the sum of $395,950.87.

SECOND: The purchaser shall simultaneously with the execution hereof pay to the Vendors the amount of the interest to November 1st, 1920, as aforesaid, viz: $395,950.87 with interest thereon at 8% per annum from November 1st, 1920.

THIRD: The above mentioned sum of $3,672,698.15 being the unpaid portion of the balance of the purchase price as aforesaid, shall be paid by the Purchaser to the Vendors in instalments as follows:

| | |
|---|---|
| Simultaneously with the execution hereof_____ | $62,500.00 |
| On January 3rd, 1921_____ | 465,137.84 |
| On April 1st, 1921_____ | 465,137.85 |
| On December 31st, 1921_____ | 2,679,922.46 |

The sale of the business was consummated and the purchase price paid by the purchaser precisely as provided by the sales agreement and its supplementary agreements of May 20, 1919, and November 24, 1920. The total selling price of the business amounted to $6,093,284.34, of which the partnership received the sum of $850,861.88 during the year 1919, through the retransfer and redelivery of certain securities enumerated in article 6 of the sales agreement; the further sum of $1,569,724.31 over the period May 1, 1919, to November 24, 1920, through withdrawals which the partners were permitted to make and which were to be applied by the purchaser toward the payment of the purchase price; the further sum of $62,500 on or about

November 24, 1920, upon execution of the supplemental agreement of that date; and the remainder, to wit, $3,610,198.15, in the year 1921.

The book value of the partnership assets, exclusive of good will, as shown by the partnership books at December 31, 1918, was $4,428,-192.10. The book value of the assets specifically reserved from the sale was $584,824.64. The capital additions previously charged to expense on the books and not included in the above stated net worth, but which were disallowed by the Commissioner as deductions in computing taxable net income, amounted to $83,730.26. The March 1, 1913, value of the tangible properties located in Brazil exceeded the value at which said properties were carried on the partnership books by the sum of $151,982.29. The net value on March 1, 1913, of all tangible assets then on hand and transferred by the sale, plus the cost of tangibles acquired subsequent to that date up to December 31, 1918, less depreciation, is $4,079,080.01.

The tangible assets transferred to the Mercantile Oversea Corporation included coffee on hand in the inventory on May 1, 1919, at the market prices of such coffee as of that date, and represented an appreciation or write-up above cost of such coffee amounting to $205,-650.83 in the New York inventory and $52,567.35 in the London inventory. The increase in the partnership transactions for the four-month period from January 1 to April 30, 1919, amounted to $1,655,-474.27, which includes this appreciation in the coffee inventories. Said increase in partnership transactions of $1,655,474.27 was credited on the partnership books, during the month of December, 1919, as of April 30, 1919, to the partners' accounts, according to their distributive shares, with the notation " This amount can not be realized until the terms of the agreement, dated May 1, 1919, for the sale of the business, have been fulfilled."

The partnership's annual accounting period was the calendar year. Its accounting records were maintained upon the accrual basis.

For the purpose of computing the gain or loss realized by the partnership upon the sale of its assets and businesses to the Mercantile Oversea Corporation, the Commissioner separated the transaction into two parts, computing the gain or loss on the tangibles and the good will separately; and held that the partnership realized a taxable gain of $260,712.35 from the sale of the tangibles; that it realized neither a gain nor a loss from the sale of the good will; and that the petitioners are liable for taxes according to their respective distributive shares in said gain of $260,712.35. The gain computed by the Commissioner represents the excess of the selling price over book value, which the Commissioner deemed to be the cost of the assets, without regard to the March 1, 1913, value, which was greater than cost. Further, the Commissioner held that the petitioners are liable for taxes, according to their distributive shares,

on the increase in the partnership transactions for the four-month period from January 1 to April 30, 1919.

LITTLETON: In his computation of the gain or loss realized by the partnership upon the sale of its assets and businesses, the Commissioner separated the transaction into two parts, computing the gain or loss on the tangibles and on the good will separately. He held that the selling price of the good will was at least equal to the March 1, 1913, value thereof and in excess of cost, and that upon this part of the transaction the partnership realized no gain or loss. He determined that the partnership had realized a taxable gain of $260,712.35 upon the sale of the tangible assets and asserted a tax against the petitioners based upon their respective interests therein. The Commissioner believes his action in computing the gain or loss on the tangibles and the good will separately is justified by the fact that the sale contract provides for the payment of a specific sum for the good will and a further sum, to be determined later in accordance with the provisions of the contract, for the tangible assets. We think this action of the Commissioner, and the premise therefor, is in error. The first clause of the sale contract expresses a sale and purchase, and binds the contracting parties to a transfer and acceptance of the partnership's entire business, including good will and firm name. It evidences an intent on the part of the vendor and vendee to sell and purchase, respectively, the entire businesses as a whole at one time and by the same transaction. All that follows thereafter in the contract are matters of mere computation and detail as to the manner in which the price to be paid by the vendee is to be determined and the time and manner of payment thereof. The contract expresses no intention to sell the tangibles and the good will as separate things, and is not susceptible of such a construction. We consider it of no importance, in this connection, that the contract provides for the payment of a specific amount for the good will and the payment of a further sum, to be determined in the manner therein set forth, specifically for the tangible assets, but regard this as a mere agreement of the parties as to the manner in which the purchase price to be paid for the entire businesses, including good will and firm name, is to be determined. The gain or loss realized by the partnership upon the sale of its assets and businesses should be determined by comparing the selling price with the cost and the March 1, 1913, value of the entire assets, tangible and intangible, taken as a whole.

The petitioners' contention that the partnership sustained a loss of $1,500,000 upon the sale of the good will is based upon a claimed

value thereof at March 1, 1913, of $1,750,000, and upon the fact that the contract provided for the sale and purchase thereof for the sum of $250,000. From the evidence before us, we conclude that the March 1, 1913, value of the partnership good will was $930,000. There is no evidence to show that the good will was acquired at any cost to the partnership, but, rather, the record indicates that it came into existence because of the character, industry, and ability of the partners, and the services they rendered in transacting the partnership business. Since the good will was not sold as a separate thing, but as a part of the entire assets and businesses, the gain or loss resulting from the sale thereof can not be determined separately. As previously stated, the gain or loss realized by the partnership upon the sale must be determined by treating the sale of all the assets as one transaction. The total selling price should be compared with the cost and the March 1, 1913, value of the combined assets, tangible and intangible; and for the purpose of the comparison the cost of the good will is to be regarded as *nil*, while the March 1, 1913, value thereof, to be added to the value of the tangibles at the same date, is $930,000.

In the computation of the gain or loss resulting from the sale of the partnership assets, the Commissioner has resorted to book values, as representative of cost, and has disregarded the March 1, 1913, value of the assets, which was greater than cost. The parties have stipulated that the March 1, 1913, value of certain properties located in Brazil was $151,982.29 in excess of the cost of those properties, and by the stipulation the Commissioner admits that on the basis of the March 1, 1913, value the gain derived from the sale of those properties was less, by the said amount of $151,982.29, than the gain theretofore computed by him. The gain or loss derived from this transaction should be computed by comparison of the selling price with the cost and March 1, 1913, value (whichever the case may be), a fact now conceded by the Commissioner.

The parties have stipulated that the increase in partnership transactions for the four-month period from January 1 to April 30, 1919, amounted to $1,655,474.27, and that this amount was computed by the use of a closing inventory valued on the basis of market, though market exceeded cost by the sum of $258,218.18. The Commissioner has held that this increase in partnership transactions is taxable to the several petitioners according to their respective distributive shares therein. We understand the words "increase in partnership transactions," as used in the stipulation, to mean the net earnings of the partnership during the period January 1 to April 30, 1919, including appreciation in the market value over cost of the inventory

on hand at the latter date, without taking into account the gain or loss, if any, resulting from the sale of the partnership assets and businesses. The petitioners contend that this increase in partnership transactions was neither distributed nor made available to them at any time, but, on the contrary, was merged in the sale and became the property of the purchaser; hence, the net income of the partnership for the year 1919, in respect of which they are liable for taxes according to their respective distributive shares, consists entirely of the gain, if any, realized by the partnership upon the sale of its assets and businesses.

Section 218(a) of the Revenue Act of 1918 provides:

That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year * * *.

Section 224 of the Revenue Act of 1918 provides:

That every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this title, and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed * * *.

The deductions referred to are those specified by section 214 of the statute. Thus, we find that the net income of the partnership, in respect of which the petitioners are liable for income tax according to their respective distributive shares, is the gross income from all sources, including the gain, if any, from the sale of its capital assets, less the statutory deductions, the latter including the loss, if any, sustained upon the sale of the partnership assets.

Whether, for the purpose of computing the partnership net income, we adopt the method advocated by the Commissioner which first ascertains the profits from operations to the date of the sale, then adds the amount of those profits to the cost of the assets at December 31, 1918, to arrive at the cost of the assets at the date of the sale, then, by comparison of the selling price with the cost thus ascertained and the March 1, 1913, value of the assets, determines the statutory gain or loss, if any, resulting from the sale of the assets, and then arrives at the partnership net income by adding to or deducting from the profits of operations the gain or loss, as the case may be, resulting from the sale of the assets; or whether the method advocated by the petitioners, which treats the profits of operations to the date of the sale as having been passed on to the purchaser of the assets and, therefore, not accrued to the partnership, and which computed the partnership net income by a comparison of the selling price with the cost of the assets at December 31, 1918, and the value

thereof at March 1, 1913, as a matter of cold figures, we reach the same result. This is demonstrated by the following illustrations:

### Commissioner's method.

| | | | |
|---|---|---|---|
| Profits from operations to date of sale | | | $1, 397, 256. 09 |
| Add: Gain from sale of business and assets: | | | |
| Selling price | | $6, 093, 284. 34 | |
| Book value of assets at 12/31/18 | $4, 428, 192. 10 | | |
| Capital additions disallowed as expense by Commissioner | 83, 730. 26 | | |
| *Assets acquired between January 1 and April 30, 1919* | 1,,397, 256. 09 | | |
| | 5, 909, 178. 45 | | |
| Assets reserved from sale | 584, 824. 64 | | |
| | | 5, 324, 353. 81 | |
| | | | 768, 930. 53 |
| Net income of partnership | | | 2, 166, 186. 62 |

### Petitioners' method.

| | | | |
|---|---|---|---|
| Selling price of assets and business | | | $6, 093, 284. 34 |
| Deduct: Cost of assets sold: | | | |
| Book value of assets at 12/31/18 | | $4, 428, 192. 10 | |
| Capital additions disallowed as expense by Commissioner | | 83, 730. 26 | |
| | | 4, 511, 922. 36 | |
| Assets reserved from sale | | 584, 824. 64 | |
| | | | 3, 927, 097. 72 |
| Net income of partnership | | | 2, 166, 186. 62 |

The computation of the gain or loss on the sale of the assets and businesses, in the foregoing illustrations, is based upon cost. If the computations were based upon the March 1, 1913, value of the assets, plus the cost of subsequent additions, the illustrations would be as follows:

### Commissioner's method.

| | | | |
|---|---|---|---|
| Profits from operations to date of sale | | | $1, 397, 256. 09 |
| Deduct: Loss from sale of business and assets: | | | |
| Stipulated value of assets at March 1, 1913, plus additions to December 31, 1918 | | $4, 079, 080. 01 | |
| March 1, 1913, value of good will | | 930, 000. 00 | |
| Assets acquired between January 1 and April 30, 1919 | | 1, 397, 256. 09 | |
| | | 6, 406, 336. 10 | |
| Selling price of assets and business | | 6, 093, 284. 34 | |
| | | | 313, 051. 76 |
| Net income of partnership | | | 1, 084, 204. 33 |

Petitioners' method.

```
Selling price of assets and business_____ $6, 093, 284. 34'
Deduct: March 1, 1913, value of assets plus cost
  of subsequent additions to 12/31/18:
    Stipulated value of assets at March 1, 1913,
      plus additions to December 31, 1918_____ $4, 079, 080. 01
    March 1, 1913, value of good will_____    930, 000. 00
                                               ─────────────────    5, 009, 080. 01

Net income of partnership_____    1, 084, 204. 33
```

The difference in the net income of the partnership as computed under the second illustration of the Commissioner's and the petitioners' methods and that computed under the first illustration of their methods is accounted for as follows:

```
Net income of partnership under second illustration_____ $1, 084, 204. 33
Add: March 1, 1913, value of good will_____      930, 000. 00
     March 1, 1913, value of tangibles in excess of book value__    151, 982. 29
                                                                 ─────────────────
Net income of partnership under first illustration_____    2, 166, 186. 62
```

The statute prescribes the basis for the determination of the gain or loss resulting from the sale or exchange of property. The selling price must be compared with the cost and the March 1, 1913, value of the assets sold. If the selling price exceeds both the cost and the March 1, 1913, value of the assets, to the extent that the selling price exceeds the higher of these factors, the partnership has realized a taxable gain; or if the selling price is less than the cost and the March 1, 1913, value of the assets, then, to the extent that the lower of these two factors exceeds the selling price, the partnership has sustained a deductible loss; but if the selling price is greater than the cost and less than the March 1, 1913, value of the assets, then the partnership has realized neither a gain nor a loss. Therefore, a proper computation of the partnership net income will involve either a combination of the Commissioner's method in the first and second illustration or a combination of the petitioners' method in the same illustration. The following shows the results obtained by the use of both methods:

| | Commissioner's method. | Petitioners' method. |
|---|---|---|
| Cost_____ | $5, 324, 353. 81 | $3, 927, 097. 72 |
| March 1, 1913, value_____ | 6, 406, 336. 10 | 5, 009, 080. 01 |
| Selling price_____ | 6, 093, 284. 34 | 6, 093, 284. 34 |
| Gain _____ | None. | 1, 084, 204. 33 |
| Earnings _____ | 1, 397, 256. 09 | None. |
| Net income_____ | 1, 397, 256. 09 | 1, 084, 204. 33 |

The difference in the partnership net income as computed under the two methods is $313,051.76; and it will be noted from the second

illustration of the Commissioner's method that this amount represents the difference between the March 1, 1913, value of the assets, as computed by the Commissioner, and the selling price, which does not represent a deductible loss because the selling price falls between the cost and the March 1, 1913, value of the assets. It is precisely this situation that the petitioners are attempting to circumvent through the use of the method which they advocate, but it is quite clear that in this they can not succeed for the following reasons:

First: The comparison which the petitioners make under their method is the selling price with the cost of the assets at December 31, 1918, and the March 1, 1913, value of the assets plus subsequent costs to December 31, 1918, while the comparison which the statute contemplates is the selling price with the actual cost and the March 1, 1913, value plus actual subsequent costs, which, in each instance, must include the cost to the date of the sale, to wit, April 30, 1919.

Second: The cost of the assets to the date of the sale and the cost of additions subsequent to March 1, 1913, must necessarily include the profits of the four-month period ended April 30, 1919, just the same as they include the profits of any other prior accounting period; and since the increase in the cost of the assets between December 31, 1918, and April 30, 1919, is attributable, not to appreciation, but to actual earnings, the increase is taxable to the partnership as earnings for the period in which earned.

The fallacy of the petitioners' method lies in their failure to take account of the fact that the partnership contracted to sell, and did sell, the earnings, which were contained in its asset accounts, for the four-month period ended April 30, 1919, which must have belonged to it before they could become the property of anyone else. The fact is that before the earnings became the property of the purchaser they were income to the seller, within the meaning of the law, and as such must be included in the partnership net income in respect of which the petitioners are liable for income tax according to their respective distributive shares therein.

We agree, in principle, with the Commissioner's action in holding that the earnings from operations to the time of the sale of the partnership assets and businesses must be included in the partnership net income, and taxed to the partners in accordance with their respective distributive shares. It is clear, however, that the Commisisoner's determination that said earnings amounted to $1,655,474.27 is in error, since this amount was computed through the use of a closing inventory valued on the basis of market when cost afforded a lower basis of valuation. In his brief filed subsequent to the hearing, the Commissioner admits error in this respect. If the difference between cost and market, to wit, $258,218.18, is deducted from the above amount,

the remainder is $1,397,256.09, which is the correct amount of earnings for the period ended April 30, 1919.

The parties have stipulated that the book value of the partnership assets, exclusive of good will, was at December 31, 1918, the sum of $4,428,192.10; that the book value of the assets specifically reserved from the sale was $584,824.64; that the cost of capital additions previously charged to expense on the books, but disallowed by the Commissioner as deductions for income tax purposes, amounted to $83,-730.26, and that the March 1, 1913, value of the assets sold and transferred, exclusive of good will, plus the cost of subsequent additions to December 31, 1918, amounted to $4,079,080.01. From these facts we draw the conclusion that the cost of the assets sold and transferred was $5,324,353.81, computed as follows:

| | |
|---|---:|
| Book value of assets at December 31, 1918 | $4,428,192.10 |
| Add: Capital additions charged to expense on books but disallowed as expense deductions for income tax purposes | 83,730.26 |
| Profits from operations to date of sale | 1,397,256.09 |
| | 5,909,178.45 |
| Deduct: Assets reserved from sale | 584,824.64 |
| Cost of assets sold and transferred | 5,324,353.81 |

We also conclude that the March 1, 1913, value of the assets sold and transferred, plus the cost of subsequent additions to the date of the sale, was $6,406,336.10, computed as follows:

| | |
|---|---:|
| Book value of assets at December 31, 1918 | $4,428,192.10 |
| Add: Capital additions charged to expense on books but disallowed as expense deductions for income tax purposes | 83,730.26 |
| Profits from operations to date of sale | 1,397,256.09 |
| March 1, 1913, value of Brazilian properties in excess of book value | 151,982.29 |
| March 1, 1913, value of good will | 930,000.00 |
| | 6,991,160.74 |
| Deduct: Assets reserved from sale | 584,824.64 |
| March 1, 1913, value of assets sold and transferred | 6,406,336.10 |

Since the selling price is greater than the cost but less than the March 1, 1913, value, as said cost and value are above computed, we conclude that the partnership realized no taxable gain or deductible loss from the sale of its assets and businesses; and that the partnership net income, in respect of which the several petitioners are taxable according to their respective distributive shares, is the amount of the earnings for the four-month period ended April 30, 1919, to wit, $1,397,256.09.

The last issue to be considered concerns the Commissioner's action in holding that the sale of the partnership's assets and businesses constituted a completed transaction for the year 1919, and that any gain or loss realized therefrom should be reflected in the partnership net

income for that year. The petitioners contend that since there was no determination within the year 1919 of the actual amount to be paid by the purchaser for the partnership assets and businesses, and that final payment was not made by the purchaser until December, 1921, the sale was not completed until the year 1921, and any gain or loss resulting therefrom should be reflected in the partnership net income for the latter year. The books of the partnership were maintained upon the accrual basis. According to the terms of the sale contract, the purchaser, on May 1, 1919, took possession of the business and of all offices, and thereafter the partners conducted the businesses for the account of the purchaser. The transaction was completed so far as the partnership was concerned and, in the event of the purchaser's failure to make payment according to the terms of the contract, the partnership could not have repossessed the properties, but would have been limited to an action to enforce payment under the contract to pay. It appears that it was not until some time later than the year 1919 that the specific amount to be paid by the purchaser for the partnership assets and businesses was determined. But, all circumstances considered, we do not think this fact · sufficient to justify the postponement until a. later year of the accounting for the gain or loss realized from the sale. The sale was consummated in the year 1919; the liability of the purchaser to pay the purchase price arose in that year; and, in our opinion, whatever gain or loss resulted from the sale accrued to the partnership in the same year. If the purchase price had not been accurately determined at the close of the partnership accounting period for 1919, the partnership net income should have been determined on the basis of the best possible estimate of what the purchase price would be; and if subsequent developments demonstrated the original estimate to be in error, the situation might have been remedied by proper adjustments within the statutory period of limitations, based upon the correct partnership net income.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*

SMITH dissents.