SALLIE STRICKLAND TRICOU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28093, 40258.   Promulgated February 29, 1932.

*J. S. Y. Ivins, Esq.*, and *Eustis Meyers, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

716

OPINION.

BLACK: The first issue which we have to decide is whether petitioner is entitled to deduct from her income of 1923 a " net " loss

for the year 1922 amounting to $236,736.82. Section 204(a) of the Revenue Act of 1921 provides that the term " net loss " means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer.

If the petitioner's husband, J. F. Strickland, had been living in 1922 when the loss in the Hidalgo Land Securities Syndicate occurred, it seems clear that under the doctrine announced in *Glenn M. Averill*, 20 B. T. A. 1196, he would have been entitled to take advantage of the "net" loss provisions provided in the 1921 Act. In *Glenn M. Averill, supra*, we pointed out that the promotion of the Berteschey Engineering Company was not an isolated venture, but typical of the manner in which petitioner carried out his business plans. So it was in the case of J. F. Strickland. The promotion and organization of the Hidalgo Land Securities Syndicate was not an isolated venture, but typical of the method which he used in promoting and organizing and financing many corporations and business ventures with which he was connected. Most of the corporations and business ventures which he promoted and organized were successful and made large profits, but the Hidalgo irrigation enterprise was an exception. Certainly as to him any loss in this Hidalgo Land Syndicate venture would have come under the net loss provisions of section 204, 1921 Act, as interpreted in the *Glenn M. Averill, supra*, decision, and other decisions of the Board. That J. F. Strickland was engaged in the business of promoting and financing corporations, there seems to be no doubt. The doctrine announced by the Board in the *Averill* case was approved by the Circuit Court of Appeals for the Eighth Circuit in *Washburn* v. *Commissioner*, 51 Fed. (2d) 949. Cf. *Henry Turrish*, 24 B. T. A. 913; *Oscar E. Rehm*, 21 B. T. A. 243; *W. H. Ostenberg*, 17 B. T. A. 738.

But J. F. Strickland, who promoted and organized the Hidalgo Land Securities Syndicate and many other Texas corporations and business ventures, died in 1921. Petitioner, who owned a one-half interest of the interest which stood in the name of J. F. Strickland in these various business enterprises, because of the community property laws of the State of Texas, succeeded to his interest at his death.

The petitioner, after the death of her huband, took charge of the property which had been accumulated by herself and husband during his lifetime and which he had managed prior to his death, and undertook the management of same. Since her husband's death she has continued this management, selling her interest in some of the corporations in which she and her husband were investors at the time of his death and buying interests in other corporations. Petitioner has kept a regular set of books each year since her husband's death, in which these transactions have been recorded.

The record shows that on several occasions prior to her husband's death, petitioner visited the Hidalgo Syndicate property and after her husband's death was in regular conference with her advisers in regard to its affairs. She caused her brother, Burr Martin, to be elected as one of the board of managers to fill the vacancy occasioned by the death of her husband. She met calls for further capital, not only on subscriptions made by her husband, but on guarantees of other subscribers. She advanced $90,000 to $100,000 to the Hidalgo Land Securities Syndicate in 1921 to 1922 in an effort to keep it going. She continued to advance money to the syndicate until it became apparent that it could not continue under the original contract, but would have to be refinanced. In this process of refinancing, petitioner's loss occurred in 1922. Can it be said that this loss is such a loss as petitioner is entitled to use in determining a "net loss" within the meaning of section 204 of the Revenue Act of 1921 and bring forward and use as a deduction in determining her net income for 1923? We do not think so.

It must be remembered that the business of the Hidalgo Syndicate was not petitioner's business. It was an association taxable as a corporation and therefore the business it conducted was the same as other corporate enterprises. The business itself was the syndicate's business. Petitioner had an investment in it and it was this investment which she lost in 1922. But mere investment losses do not constitute "losses incurred in operating a trade or business regularly carried on" by the taxpayer. *Robert T. Cunningham*, 20 B. T. A. 428; *Fridolin Pabst*, 6 B. T. A. 843; affd., 36 Fed. (2d) 614; *Rogers v. United States*, 41 Fed. (2d) 865. Such losses, to be used in determining a "net loss" within the meaning of the statute, must be of such character as to constitute a loss incurred in operating a trade or business regularly carried on by the taxpayer. *Glenn M. Averill, supra; Washburn v. Commissioner, supra; Mente v. Eisner*, 266 Fed. 161; *Rogers v. United States, supra.*

It is clear petitioner was not engaged in any trade. Was she operating a business in 1922 within the meaning of the statute? There is nothing to show that after the death of J. F. Strickland petitioner became the organizer and promoter of corporations as he was in his lifetime. Up to his death she was engaged in no business at all, and after his death she looked after and cared for her investments, of which she became sole owner at his death. But merely safeguarding investments is not operating a business within the meaning of the statute.

As pointed out by the court in *Washburn v. Commissioner, supra*, "A party may have investments in corporate stock, have no particular occupation and live on the return of his investments. That

would not constitute business under the statute in question." Cf. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622.

The evidence shows that after the death of J. F. Strickland and in the intervening years between the date of his death and the hearing in this proceeding, petitioner bought and sold a considerable number of stocks and bonds of corporations and other securities— not much during the first two or three years after Strickland's death, but more later as time went on. Even if it be conceded that these purchases and sales were sufficient in frequency and manner of dealing to constitute petitioner, in these later years, a dealer in securities, that fact would not help her any in this proceeding. The fact would still remain that the loss which she incurred in Hidalgo Land Securities Syndicate was an investment loss and not connected with any securities which she bought and sold in her business as a dealer in securities (if indeed she ever established any such business). *George P. Sacks*, 25 B. T. A. 415.

We sustain respondent in his disallowance of petitioner's claimed " net " loss.

The next issue which we have to decide is what loss, if any, is petitioner entitled to deduct in determining her net income for 1925 because of her disposition in that year of her interest in the Liberty Investment Company and of 50 shares of stock in the Southwest National Bank, which she alleges became worthless in 1925. The circumstances by which petitioner acquired her interest in the Liberty Investment Company and her stock in Southwest Bank have all been stated in our findings of fact and will not be repeated here.

Petitioner's exchange of 200 shares of stock in Security National Bank for 150 units of interest in the Liberty Investment Company and 50 shares of stock in Southwest Bank took place under the Revenue Act of 1921 and is governed thereby, but whatever loss, if any, she is entitled to deduct in the year 1925 is governed by the Revenue Act of 1926, and the basis for determining such loss, if any, we think is governed by section 204 (a) (6) of that act, printed in margin.[1]

---

[1] Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(6) If the property was acquired upon an exchange described in subdivision (b), (d), (e), or (f) of section 203, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by paragraph (1), (2), (3), or (4) of subdivision (d) of section 203 to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

Recently we had before us in *Securities Co.*, 25 B. T. A. 446, the question whether a taxpayer had the right to have the profit or loss from the sale of stock received in 1917 under a reorganization computed under the provisions of section 204(a)(6) of the Revenue Act of 1924 (a section very similar to section 204(a)(6) of the Revenue Act of 1926). We held against petitioner's contention and held that said section did not apply because the taxpayer in that case not only exchanged his common stock share for share for common stock of the new company, but, as a condition precedent to such exchange, he had to purchase $50 face value of bonds of the new company and pay cash therefor. We said, therefore, that section 204(a)(6) did not apply. In the instant case the facts show that the stockholders of the Security Bank exchanged their shares for shares in the Liberty Investment Company and the Southwest Bank and did not have to purchase anything as a condition precedent to such exchange of stock. True, each stockholder of the Security Bank was given the privilege to purchase other stock in the Southwest Bank in addition to that which he was to receive under the exchange plan, but many of the stockholders did not avail themselves of such option and petitioner was one who did not avail herself of such privilege and received only the shares which were allotted to her in the exchange. Such a situation it seems to us comes squarely within section 204(a)(6) of the Revenue Act of 1926, and was very similar to the situation which we had before us in *Glenn H. Curtiss*, 21 B. T. A. 629, in which we held that section 204(a)(6) of the 1924 Act applied. In that case, one share of preferred stock in the Curtiss Aeroplane and Motor Corporation was exchanged for one-half share of preferred stock in the Curtiss Aeroplane and Motor Company, Inc., and one-half certificate of beneficial interest in the Curtiss Assets Company, and we held it was possible to apportion the cost of a share in the original corporation between the shares received in exchange in the two separate corporations, because we had evidence as to the fair market value of the respective shares of stock in the new corporations.

In the instant case the Commissioner refused to allow petitioner to take any loss on the Liberty Investment Company shares in 1921 because it was impossible to apportion the cost of the original shares in the Security Bank between the shares of the Liberty Investment Company and the shares in the Southwest Bank, and held that no gain or loss would be recognized on the disposition of either until all was disposed of. Respondent's counsel now argues that petitioner should have taken her loss on her shares of interest in the Liberty Investment Company in 1921, because it never had any value and became worthless in that year. We do not agree with this conten-

tion. The evidence shows that at the time stock in the Security Bank was exchanged for stock in the Southwest Bank and the Liberty Investment Company, the stock in the Southwest Bank had a book value of $125 per share and a fair market value in 1921 of $150 per share, but the shares in the Liberty Investment Company had no fair market value and what value, if any, such shares had was altogether uncertain. In this state of facts, it was impossible to apportion the cost of the original shares between the two classes of shares received in exchange. No gain or loss could be recognized to petitioner on the disposition of any of the stock until all was disposed of. Article 1567 of Regulations 62, reads in part as follows:

If property is exchanged for two kinds of property and no gain or loss is recognized under Articles 1564 and 1566, the cost of the original property shall be apportioned, if possible, between the two kinds of property received in exchange for the purpose of determining gain or loss upon subsequent sale, or if no fair apportionment is practicable, no profit on any subsequent sale of any part of the property received in exchange is realized until, out of the proceeds of sale, shall have been recovered the entire cost of the original property.

In *Glenn H. Curtiss, supra*, we held that while Regulations 65 (Revenue Act of 1924) and Regulations 69 (Revenue Act of 1926) do not contain any provisions corresponding to article 1567 of Regulations 62 (Revenue Act of 1921), nevertheless, the provisions of said article lay down a principle which is equally applicable to reorganization provisions of subsequent acts.

In 1925 petitioner sold her 150 shares in the Liberty Investment Company for $3, and her stock in the Southwest National Bank became worthless in the same year. In view of these facts, we hold that petitioner's claim for loss on account of disposition of shares in the Liberty Investment Company and on account of worthlessness of stock in the Southwest National Bank should be allowed. The deficiency for 1925 will be computed accordingly.

In *Cullen F. Thomas*, 14 B. T. A. 1341, we had before us the question of a loss arising through the sale of some Liberty Investment stock in 1921 (same sort of stock as involved herein). We there held that the taxpayer was entitled to take his loss on such shares in 1921 because he had disposed of the shares in that year.

The rules for determining loss in that case came under the Revenue Act of 1921, whereas the basis for determining gain or loss in the instant case is determined by section 204 (a) (6) of the Revenue Act of 1926, as we have already explained. The Revenue Act of 1921 had no provisions similar to section 204 (a) (6).

Reviewed by the Board.

*Decision will be entered under Rule 50.*