EDWIN D. AXTON, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56160–56163, 56348, 56438–56442.

Promulgated May 14, 1935.

*Elwood Hamilton, Esq.,* and *J. C. W. Beckham, Jr., Esq.,* for the petitioners.

*Arthur Fast, Esq.,* for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined deficiencies in the petitioners' income taxes for the year 1928 as follows:

| Petitioner | Docket no. | Amount | Petitioner | Docket no. | Amount |
|---|---|---|---|---|---|
| Edwin D. Axton | 56160 | $7,866.84 | Charles F. Francke | 56438 | $457.95 |
| Edwin J. Helck | 56161 | 3,082.83 | A. C. Wolf | 56439 | 496.51 |
| Robert L. Axton | 56162 | 962.68 | Henry H. Barnes | 56440 | 644.87 |
| A. S. Lewis, Sr | 56163 | 1,576.59 | Wood F. Axton | 56441 | 20,911.44 |
| I B. Baker | 56348 | 1,651.40 | G. G. Wedding | 56442 | 3,593.75 |

The proceedings were consolidated. A single common issue is involved. That issue relates to the amount of profit realized by the

[1] Proceedings of the following petitioners are consolidated and decided herewith: Edwin J. Helck; Robert L. Axton; A. S. Lewis, Sr.; I. B. Baker; Charles F. Francke; A. C. Wolf; Henry H. Barnes; Wood F. Axton; G. G. Wedding.

petitioners in 1928 at the time they received shares of class A and class B stock of a new corporation in exchange for their shares of stock in an old corporation and immediately sold the class A shares for cash. The parties have entered into a stipulation of facts. The only other evidence in the record is the testimony of witnesses bearing upon the question of the value of the class B stock at the time it was received by the petitioners.

The petitioners are all individuals. I. B. Baker resides at Hayward, California. Henry H. Barnes resides at St. Louis, Missouri. The other petitioners reside in or near Louisville, Kentucky. Each petitioner at the beginning of 1928 owned common stock in the Axton-Fisher Tobacco Co. (hereinafter called the old corporation). The stipulation shows the number of shares owned by each petitioner, the number of shares acquired prior to March 1, 1913, the fair market value of a share on March 1, 1913, the number and cost of shares acquired after February 28, 1913, and the number of shares acquired as a stock dividend in 1920. The old corporation had been engaged in the tobacco business from the date of its incorporation in 1905. Its board of directors decided on February 22, 1928, to incorporate a new corporation, to be known as " The Axton-Fisher Tobacco Company " (hereinafter referred to as the new corporation), and to transfer the entire business, assets, and good will of the old corporation as a going concern to the new corporation in exchange for 100,000 shares of class B common stock of the new corporation and 40,000 shares of its class A common stock. The stockholders of the old corporation met and agreed to this plan. The new corporation was promptly incorporated. Its capital stock consisted of 20,000 shares of $100 par value 6 percent preferred stock, 50,000 shares $10 par value class A common stock, and 200,000 shares of $10 par value class B common stock. Only one half of the preferred and one half of the class B shares were issued. The new corporation sold 10,000 shares of its preferred stock and 10,000 shares of its class A common stock to bankers and issued 40,000 shares of class A common stock and 100,000 shares of class B common stock to the old corporation in exchange for the latter's entire business, assets, and good will. The stockholders of the old corporation exchanged their old stock for the class A and class B stock of the new corporation which the old corporation had received for its assets. However, this class A stock was not distributed to those stockholders; instead, it was sold to the bankers and the stockholders actually received for each share of stock of the old corporation about $349.98 in cash and 22 shares of class B stock. The sale of this class A stock to the bankers had been prearranged as a part of the whole plan. The old corporation

was then dissolved. The stipulation shows the number of shares of B stock received by each of the petitioners, the number of shares of A stock which each was entitled to receive, and the amount of cash which each received from the sale of the A stock. Each of the petitioners reported in his income tax return for 1928 a profit equal to the excess of the amount of cash which he received from . the sale of the class A common stock of the new corporation over an amount which, in his opinion, represented the entire basis applicable to his shares in the old corporation. The Commissioner, in determining the deficiencies, included in the income of each petitioner the entire amount of cash which he had received, on the theory that the gain was the excess of the cash and the fair market value of the class B shares over the basis of the old shares and the cash received did not exceed the gain from the transaction. He held that the provisions of section 112(c)(1) of the Revenue Act of 1928 were applicable. He determined that the value of the class B stock was $20 a share at the time received by these petitioners.

We find as a fact from a consideration of all of the evidence in this case that the class B stock had no fair market value and had no value, at the time it was received by these petitioners, on which a practicable allocation of the basis of the old shares could be made.

The above finding of fact for all practical purposes determines the real issue in the case. It will enable the parties to compute the tax liability of each petitioner under Rule 50. The fair market value of the class A shares at the time received is clearly shown and is conceded to have been the price at which they were immediately sold. The gain which the petitioners realized upon the receipt of the class A and class B stock is the excess of the fair market value of the class A stock over the basis of the old shares surrendered in the exchange. If that was a transaction from which no gain or loss was recognized for tax purposes, then the petitioners realized a gain from the subsequent sale of the class A shares equal to the excess of the cash received over the basis of the old shares. Thus, no matter which gain is recognized, the amount of gain is exactly the same.

Not only is there no evidence to support the Commissioner's determination of a fair market value of $20 a share for the class B stock at the time it was received by these petitioners, but the evidence clearly shows that determination to have been erroneous. In order to hold that the class B stock had no fair market value upon which a profit could be computed and no value upon which a practicable allocation of the old basis could be made, it is not necessary to believe that the class B stock was worthless. If anything is ever realized from the disposition of it, the entire amount realized will be income to these

petitioners. Cf. art. 58, Regulations 74. The class B stock in question probably had some value. It was all held by a small group of individuals who had been connected with the old corporation and who were expected to continue with the new corporation. None of this stock was bought or sold until long after the date in question, when conditions had materially changed. If the assets of the corporation could have been liquidated at their book value, about $8 would have been paid on each share of class B stock. About 16 cents per share per year would be available for dividends on this class of stock if average earnings of the past were maintained. This stock had exclusive voting privileges so long as dividends on the other stock were not far in default. The parties agree that if a certain broker had been present to testify, he would have said he was familiar with the fair market value of the class B stock of the new corporation and that in his opinion it had a fair market value in 1928 in excess of $15 a share. There is some other evidence from which the respondent might argue that this stock had some fair market value. On the other hand, however, there is the fact that none of it was sold; there was strong probability that the large earnings of 1927 would not be repeated; before any dividends would be available to the class B stockholders, earnings had to be used to pay $60,000 as dividends on preferred stock, to pay $160,000 as dividends on class A stock and to set aside $50,000 annually as a sinking fund; several officers of the corporation testified that in their opinion the class B stock had no fair market value at the time it was received by these petitioners; and there is other evidence to show that whatever small value the class B stock had in 1928 was most uncertain and highly speculative. The respondent sought witnesses to testify that the stock had a fair market value. Two of these witnesses, when called, failed to express an opinion that the stock had any fair market value. Consideration has been given to all of the evidence and it indicates with reasonable certainty that no figure can be satisfactorily fixed upon to represent the value of the class B stock at the time it was received by these petitioners. Under such circumstances the entire old basis should be recovered out of the proceeds and the excess taxed as income as received. Cf. art. 58, Regulations 74.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

BLACK dissents.