H. A. Green, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Clarke E. Dye, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 74910, 74911.   Promulgated December 31, 1935.

*O. A. Neal, Esq.*, for the petitioners.
*R. P. Hertzog, Esq.*, for the respondent.

OPINION.

ARUNDELL: The parties are in agreement as to the cost to petitioners of their Doernbecher Co. stock, and further that the exchange of that stock for Furniture Corporation stock and debentures was a nontaxable exchange. Counsel for petitioners also concedes that the transfer of Furniture Corporation stock at $20 per share in cancellation of the petitioners' indebtedness would be a taxable transaction if it were practicable to make an allocation of basis between the stock and debentures.

It is the contention of the petitioners that it is impracticable to apportion the cost of the Doernbecher stock between Furniture Corporation stock and debentures and that the respondent's apportionment is wholly arbitrary and has no basis or foundation in fact. Then they say that it being impracticable to apportion cost, there can be no gain or loss until they have disposed of enough of the new stock and debentures to have recovered their entire cost of the old stock

and thereafter all the balance received will be profit, or, if an insufficient amount is realized on the disposition of all the stock and debentures to equal the cost of their old stock, there will be a loss.

There is no provision in the statute (Revenue Act of 1928) directing either an apportionment of cost between two or more kinds of property received in a nontaxable exchange, nor is there any statutory authorization for deferring the reporting of a profit where an apportionment is impracticable. However, for a number of years the respondent's regulations have provided for apportionment of cost under various circumstances and for the deferment of recognition of gain until full cost is recovered where apportionment is impracticable. See art. 39, Regulations 45; arts. 39, 1567, Regulations 62; art. 39, Regulations 65 and 69. The validity of these regulations has been recognized. See *Salvage* v. *Commissioner*, 76 Fed. (2d) 112, and cases there cited. Article 1567 of Regulations 62, interpreting the Revenue Act of 1921, provided in part as follows:

\* \* \* the proportion of the original cost, or other basis, to be allocated to each class of new securities is that proportion which the *market value* of the particular class bears to the *market value* of all securities received on the date of the exchange. \* \* \* [Italics supplied.]

Regulations issued under subsequent revenue acts do not contain the exact language that appears in the foregoing quotation. It has been held, however, that the quoted provision lays down a principle that is equally applicable in determining gain or loss under subsequent revenue acts. See I. T. 2335, C. B. VI-1, p. 18, so holding with respect to the Revenue Act of 1926, which we approved in *Glenn H. Curtiss*, 21 B. T. A. 629; affd., 57 Fed. (2d) 847, a case arising under the Revenue Act of 1924; *Sallie Strickland Tricou*, 25 B. T. A. 713, involving the Revenue Act of 1926. Cf. *Edwin D. Axton*, 32 B. T. A. 613, a case under the Revenue Act of 1928.

In making his allocation of basis the respondent started out with the assumption that the Furniture Corporation stock was worth $20 per share and the debentures were worth their face value. His computation then, in the case of petitioner Green, was as follows:

| Securities received | Value | Percentage | Cost |
|---|---|---|---|
| 123,478 shares stock | $2,474,960.00 | 74.16657 | $345,957.69 |
| Debentures | 862,069.00 | 25.83343 | 120,502.73 |
| Total | $3,337,029.00 | 100.00000 | $466,460.42 |

$345,957.69 divided by 123,478 shares—$2.801776—Cost per Share.

A similar computation in the case of petitioner Dye resulted in a determined cost of $3.0896814 per share.

It is plain enough we think that $20 per share for the stock and face value for the debentures did not represent market values of those securities when received by the petitioners. The evidence is that the valuation figures which were assembled as a basis for the merger of the furniture companies were based on appraisals made at peak prices in 1929, plus arbitrary good will values, and that those figures were far above true values in 1930 when the companies were tentatively brought together. The testimony of Green, who was thoroughly familiar with the entire transaction, is that the merger negotiations amounted to a " horse trading " proposition, and that the figures used did not purport to represent actual values. Even if we assume that when the first agreements were signed by the constituent companies their assets would support a value of $20 for the stock and par for the debentures, that situation did not obtain when the merger was actually consummated. The companies never received the cash called for by the agreements; they consented to take debentures in lieu of cash under an agreement that the debentures were to be taken up for cash and that agreement was not fulfilled; 7 of the 10 companies withdrew and of course took their assets out of the merger; the bankers failed without completing their contracts. The so-called net worth of the three companies remaining in the merger was $883,055.93 as compared with the figure of $3,948,-199.09 for the 10 who originally agreed to join. This situation gives ample support for petitioner Green's testimony that it " looked ridiculous " to assign a value of $20 to the stock and to treat the debentures as worth par.

The evidence goes further than establishing error in the values ascribed by respondent to the stock and debentures. It establishes that neither of them had a market value. Petitioner Green so testified, and he was thoroughly familiar with the merger negotiations; he was president of both the Doernbecher Co. and the Furniture Co.; he was an experienced furniture manufacturer, having been in the furniture business more than a quarter of a century. His testimony is fully supported by other evidence. The stock and debentures were not listed on any exchange and there were no sales of either of them. The merger or consolidation of the several companies into the Furniture Corporation was conceived when prices were at an extreme high, and the plans for bringing the companies together were based on the peak prices of 1929, to which were added arbitrary figures for good will. The bankers who were managing the negotiations apparently ignored the financial cataclysm of 1929 and attempted to complete the merger on the basis of prices which to a great extent were nonexistent. They tried and failed. It is inconceivable that the comparatively minor group of assets finally brought together

could give any substantial value to the huge issue of debentures and stock which were designed to be issued on the padded peak prices for the assets of all 10 companies plus the Doernbecher stock. During the year 1930 the whole matter was in a state of flux. The bankers were having to change their plans; prices were falling; it was not known what companies would finally be in the merger, and it could not be known what assets the new company would have. In these circumstances we are of the opinion that the stock and debentures had no market value and we have so found as a fact.

As above pointed out, the principle of allocation is based on market value. Where there is no market value, no allocation can be made and the taxpayer is entitled to recover his entire original basis before gain or loss will be recognized on the disposition of the new securities. *Edwin D. Axton, supra.*

As the evidence in these cases not only shows the respondent's allocation to have been erroneous, but further establishes that the new securities had no market value when acquired by the petitioners, we hold that the petitioners may recover the full cost of their Doernbecher stock before gain or loss will be recognized. The debts which were canceled in 1931 in consideration of the Furniture Corporation stock were less than cost of the Doernbecher stock and no gain is to be recognized to petitioners on that transaction.

*Decision will be entered under Rule 50.*