R. E. BAKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARTHUR G. MCKEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. W. RUTLEDGE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58152, 61120, 61121. Promulgated June 30, 1938.

*Arthur C. Denison, Esq.*, and *Oscar I. Koke, C. P. A.*, for the petitioners.

*S. B. Pierson, Esq.*, for the respondent.

1138

1142

OPINION.

MELLOTT: The issues raised in the proceedings of McKee (No. 61121) and Baker (No. 61120) will be discussed first. The principal

one may be stated generally in the form of a question as follows: "May the petitioners, in computing their gains from the sales in 1928 of their stock in the reorganized Delaware Co., use other than a 'zero basis' for the stock sold?" In other words, what basis should be used for the purpose of computing petitioners' gain or loss upon the sales of such stock and are they now estopped to claim a larger basis than zero?

The determination of the Commissioner that zero is the proper basis for the stock is predicated primarily upon section 113 (a) (6) of the Revenue Act of 1928.[4] Under that section, which provides by its terms that the basis shall be the same as the property exchanged, "increased in the amount of gain * * * that was recognized upon such exchange under the law applicable to the year in which the exchange was made * * *", it is necessary to examine the law as it existed at that time (April 1, 1920). This is reflected in section 202 (b) of the Revenue Act of 1918.[5]

The stock which was sold by these petitioners in 1928 was stock which had been received by them in a nontaxable exchange in April 1928. Accordingly, it had the same basis for the computation of gain or loss that the stock exchanged had in their hands on April 1, 1920, except in so far as such basis had been affected by the sales

---

[4] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property ; except that—

&ast; &ast; &ast; &ast; &ast; &ast;

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired upon an exchange described in section 112 (b) to (e), inclusive, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by section 112 (b) to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

[5] SEC. 202. (b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any ; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged.

When in the case of any such reorganization, merger or consolidation the aggregate par or face value of the new stock or securities received is in excess of the aggregate par or face value of the stock or securities exchanged, a like amount in par or face value of the new stock or securities received shall be treated as taking the place of the stock or securities exchanged, and the amount of the excess in par or face value shall be treated as a gain to the extent that the fair market value of the new stock or securities is greater than the cost (or if acquired prior to March 1, 1913, the fair market value as of that date) of the stock or securities exchanged

and purchases made subsequent to April 1, 1920, and prior to the date of the reorganization in 1928. Whatever effect such sales or purchases had upon the basis, and respondent's contention that the petitioners are estopped to use a basis other than zero, will be discussed later; but first the basis of the stock as of April 1, 1920, will be determined.

Columns 1 and 3 of the following schedule reflect the method, as we interpret the respondent's notice of deficiency and his argument upon brief, by which the basis of the common stock of the Delaware Co. stock was determined to be zero. Columns 2 and 4 reflect the present contentions of the petitioners.

| | McKee | | Baker | |
| --- | --- | --- | --- | --- |
| | Column 1 | Column 2 | Column 3 | Column 4 |
| Cost of stock Penn. Co. 1-1-15, 270 sh.[1] | (150 sh.) $15,000.00 | $130,000 | (60 sh.) $6,000.00 | $52,000 |
| Capital contributions (earnings taxed to stockholders) | 78,261.79 | 135,000 | 45,272.75 | 99,000 |
| Purchase price 50 sh | | | 55,865.00 | 55,865 |
| Total cost of Penn. Co. stock 4-1-20 | 93,261.79 | 265,000 | 107,137.75 | 206,865 |
| Par value Del. Co. stock received 4-1-20 | $150,000.00 | $150,000 | $110,000.00 | $110,000 |
| Par value of Penn. Co. stock exchanged for Del. Co. stock | 15,000.00 | 15,000 | 11,000.00 | 11,000 |
| Excess in par value (The above excess must be "treated as a gain to the extent that the fair market value of the new stock * * * is greater than * * * the cost of the stock exchanged.") | 135,000.00 | 135,000 | 99,000.00 | 99,000 |
| Fair market value of new stock[2] | 150,000.00 | 385,940 | 110,000.00 | 283,020 |
| Cost of stock exchanged | 93,261.79 | 265,000 | 107,137.75 | 206,865 |
| To be treated as gain inasmuch as this amount is not greater than the excess in par value | $56,738.21 | $120,940 | $2,862.25 | $76,155 |
| Statutory basis of Del. Co. stock (cost plus recognizable gain) | 150,000.00 | 385,940 | 110,000.00 | 283,020 |
| Deduct par value of Del. Co. preferred stock received | 150,000.00 | 150,000 | 110,000.00 | 110,000 |
| Basis of Del. Co. common stock received | Zero | 235,940 | Zero | 173,020 |

[1] Respondent determined the value of all assets to be $27,000, there being 270 shares of par value of $100. Petitioners claim that the assets had a value of $234,000.
[2] Respondent determined that the fair market value of the new stock was no more and no less than the total net worth as shown by its books prior to the exchange, viz., $388,666.66. Petitioners claim that such stock had a fair market value of at least $1,000,000.

Petitioners, stating that they have consistently followed the "recovery of cost" theory in respect to proceeds realized from sales, now insist that they have overpaid their tax. McKee contends that he should have reported a gain of $111,349.07 instead of the $217,289.67 which he reported. Baker contends that he should have reported a gain of $25,419.04 instead of the $86,234.62 which he reported. The

details of their present contentions are reflected in the following schedule:

| | McKee | Baker |
|---|---|---|
| Basis of common stock acquired on April 1, 1920, exchange. | (750 shares) $235,940.00 | (550 shares) $173,020.00 |
| Deduct proceeds realized from shares sold | (443⅙ shares) 101,189.81 | (348¾ shares) 65,936.82 |
| Residual basis 4–1–1928 | (306⅚ shares) 134,750.19 | (201⅙ shares) 107,083.18 |
| Add cost of shares purchased 4–1–1920 to 4–1–1928 | 67,063.60 | 66,397.78 |
| Basis for class A and B shares | 201,813.79 | 173,480.96 |
| Proceeds realized: | | |
| Class A | $250,104.00 | $198,900.00 |
| Class B | 63,059.46 | |
| Total | 313,163.46 | 198,900.00 |
| Taxable gain (difference between basis and amounts realized) | $111,349.67 | $25,419.04 |

The first difference between the parties is in connection with the cost of the Pennsylvania Co. stock. The respondent used the amounts shown by the books of the corporation as contributed by the partners, viz., $15,000, $6,000, and $6,000, or a total of $27,000. This did not include any value for what the petitioners refer to as "intangibles", i. e., good will, uncompleted contracts, patterns, patent licenses and rights, designs, drawings, formulae, etc., turned over by the partnership to the corporation but not shown on the books. Petitioners place a value upon all of the assets of $234,000 on January 1, 1915, determined as hereinafter shown. We have determined that the assets had a value of $115,000 rather than that ascribed to them by either of the parties. In making such determination we have considered all of the evidence and the contentions made by the respective parties. It will not be amiss, however, to point out some of the reasons why we have not accepted the value fixed by either.

We do not agree with respondent's contention that no value can be attributed to the so-called intangible assets because none was set up on the books of the company. This is a mere evidentiary fact and not controlling. *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216; *D. N. & E. Walter & Co.*, 4 B. T. A. 142. Nor do we agree that it is improper to ascribe any value to the good will and similar factors merely because of the fact that the corporation afterwards claimed and was allowed the classification of a "personal service" corporation. If the partnership, through the character, skill, industry, integrity, and ability of the partners had built up good will, which was transferred to and utilized by the successor corporation, it was an asset of value and could have been set up on the books of the corporation. Though this was not done, it is nevertheless our duty to determine its value. No uniform rule can be stated for the determination of such value. It is a question of fact to be determined in the light of all the facts and circumstances.

Cf. *Watab Paper Co.*, 27 B. T. A. 488; *House & Herrmann*, 13 B. T. A. 621; affd., 36 Fed. (2d) 51; *Mossman, Yarnelle & Co.*, 9 B. T. A. 45; *Schulz Baking Co.*, 3 B. T. A. 470.

Some of the facts and circumstances which have been considered are the following: The partners had carried on their highly specialized and technical trade or business for several years. They were experts in their line and had attained enviable reputations, both individually and as members of the firm of Arthur G. McKee & Co. The firm name was well known, especially to the iron and steel companies in the United States and Canada, many of whom had employed it to supervise the construction and installation of new blast furnaces and ovens. Considerable sums of money had been expended by the partnership and its members in the development of patents, new processes, formulae, drawings, designs, blueprints, and methods of construction, all of which were available to the corporation. In addition the corporation had the exclusive right to the use of some eighty patents owned by the Appliance Co. many of which were basic. The record of the earnings of the partnership for the four years immediately preceding the organization of the corporation shows a progressive increase in earnings each year after the deduction of substantial salaries paid to the partners. These factors, we think, show a substantial value for the good will of the partnership, though we do not deem it necessary to set out such value in dollars and cents. Cf. *Henry F. McCreery*, 4 B. T. A. 967; *Theo Planz, Inc.*, 10 B. T. A. 1158.

Another factor which has been considered in fixing the cost or value of the total assets turned over by the partnership to the corporation is the Appliance Co. stock. Fifty-one shares of the 100 shares issued were carried on the books at $510. During 1914 this company paid dividends of $13,000 and had undistributed profits of $3,366.38. This, we think, indicates that the stock had a value greatly in excess of that set up on the books of the corporation. Whether such value should be classified as part of the good will or added to the value of the tangible assets need not be decided. It is, however, a factor to be, and which has been, considered in determining the value of all the assets to be $115,000, when turned over by the partnership to the corporation.

The value urged by the petitioners of $234,000 is not justified by the evidence. It was determined, as shown in the margin,[6] through the

| Formula used by petitioner | | Formula under A. R. M. 34 |
|---|---|---|
| Earnings of business: | | |
| 1911 | | $8,846.61 |
| 1912 | | 18,168.83 |
| 1913 | $36,121.56 | 23,271.56 |
| 1914 | 40,161.21 | 24,161.21 |
| 1915 | 37,401.44 | |

use of a formula. Apparently an effort was made to apply the formula suggested by the Commissioner in A. R. M. 34, 2 C. B. 31; but instead of using the average earnings over a period of years *prior* to the basic date, petitioners have used an average of the earnings for two years prior and two years subsequent to that date. In addition, the stipulated earnings for three of the years were less than those used by the petitioners. If, therefore, a formula should be used for the purpose of determining the value of the assets, the one set out in the margin as "Formula under A. R. M. 34"[6] would probably give a fairer and more nearly accurate approximation than the one used by petitioners.

The fair market value of the stock of the Delaware Co. received by petitioners in exchange for their stock in the Pennsylvania Co. must next be determined. It will be noted that the respondent treated the par value of 10 shares of the preferred stock of the Delaware Co. ($1,000) as the combined fair market value of 10 shares of the preferred and 5 shares of the common, received by petitioners for each share of the common stock of the Pennsylvania Co. He then attributed all of such value to the preferred stock of the Delaware Co., leaving a "zero basis" for the common, "for the reason [as stated in his notice of deficiency] that the preferred stock was issued in an amount equal to the book value or net worth of the old corporation and since no intangible value is recognized, no value is assigned to the common stock."

Petitioners, as shown in their contentions, *supra*, assign an aggregate fair market value to the 1,943⅓ shares of common and 3,886⅔ shares of preferred of $1,000,000. Deducting the par value of the preferred, which they owned, from their aliquot portions of the $1,000,000, they determine their basis for the common stock to be

| Formula used by petitioner | | Formula under A. R. M. 34 |
|---|---|---|
| 1916 | $67,001.56 | |
| | 180,685.77 | $74,448.11 |
| Average earnings | $45,000 | 18,612.03 |
| Less earnings on tangible assets at 8% (on $15,000) | 1,200 | (On $27,000) 2,160.00 |
| Earnings on intangible assets | 43,800 | 16,452.03 |
| Capitalization on average annual earnings attributable to intangible assets at 20% | $43,800 | $16,452.03 |
| | 5 | 5 |
| | 219,000 | 82,260.15 |
| Value of partnership business: | | |
| Intangible assets | 219,000 | 82,260.15 |
| Tangible assets | 15,000 | 27,000.00 |
| Total | 234,000 | 109,260.15 |

as shown in the tabulation, i. e., for McKee's 750 shares, $235,940, and for Baker's 550 shares, $173,020.

The evidence shows that the income of the Pennsylvania Co. from 1915 to 1920, after deducting the salaries paid to McKee, Baker, and Herr, increased from $24,801.44 to $174,327.82; that the net worth, as shown by its books, increased from $27,000 to at least $388,666.66 during the same period; that the secretary determined a value of $172.55 for the common stock of the Delaware Co. as of April 1, 1920, for the purpose of establishing a selling price and that both he (Baker) and McKee made sales during that year at that price; that during the years 1920 and 1921 McKee and Baker purchased such stock at $259.49, $379.08, and $399.50 per share. Baker, testifying at the hearing before us, stated that in his opinion the stock of the Delaware Co. on April 1, 1920, was worth 8 times the earnings for the preceding 12 months. One investment banker expressed the opinion it was worth 6⅔ times the average earnings during the period from January 1, 1918, to April 1, 1920, while another (both called by petitioners) stated that he would value it on the basis of from 5 to 7 times its net earnings available for the payment of dividends. We have carefully considered all of the evidence and have concluded, as shown in our findings, that the fair market value of the 3,886⅔ shares of the preferred stock of the Delaware Co. on April 1, 1920, was $388,666.66 and the fair market value of the 1,943⅓ shares of common was $443,978.54, a total of $832,645.20.

Respondent's affirmative plea of estoppel will be considered next. He contends that even if it be held that the common stock had a fair market value on April 1, 1920, petitioners should not be allowed to use it because they elected to treat the transaction in 1920 as nontaxable, elected to report no profit on subsequent sales, escaped taxation on the profit derived from the sales made prior to 1928, and, since the statute of limitations has now run against the collection of taxes for those years, that they are estopped to claim a stepped-up cost basis.

In *United States* v. *Scott & Sons, Inc.*, 69 Fed. (2d) 728, the court stated:

* * * To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the person against whom an estoppel is claimed. * * *

The evidence shows that no gain was reported by the petitioners in 1920 because they believed, and were so advised, that the transaction constituted a distribution of a nontaxable stock dividend, since merely the surplus, consisting entirely of earnings upon which the

stockholders had paid income taxes, had been capitalized. Baker testified—and notwithstanding the fact that he was an interested party we are of the opinion that he was an entirely credible witness—that no profits were reported on the sales between 1920 and 1928 because petitioners believed they were "merely recovering cost." Inasmuch as investigations were made by revenue agents and no questions were raised, he was of the opinion that they had acted properly. The report made by the revenue agent indicates that he was justified in this belief; for therein it is stated that the capital of $38,866.66 outstanding at the date of reorganization in 1920 was "increased to $388,666.66 by a stock dividend." We do not understand that the respondent is making any claim that the petitioners acted fraudulently or that they were guilty of willful misrepresentation or wrongful misleading silence.

There is no showing that the respondent was ignorant of the true facts or that he was misled by any act of commission or omission on the part of these petitioners. As stated in *Brooklyn City Railroad Co.*, 27 B. T. A. 77, 83; affd., 72 Fed. (2d) 274, "certainly misconstruction of the law, and action based upon a legal theory rather than upon a factual theory, would not constitute a false representation concerning a material fact." Nor can estoppel "originate in a mere statement of law or in silence due to an error of law." *Commissioner* v. *Union Pacific R. R. Co.*, 86 Fed. (2d) 637, affirming 32 B. T. A. 383. Estoppel can not be "predicated on a mistake of law in the absence of some misrepresentation of fact," *Estate of William Steele*, 34 B. T. A. 173, 175; nor does an innocent mistake made in a tax return afford a basis for its invocation. *Wobber Brothers*, 35 B. T. A. 890, 892. Estoppel must be proven by the one asserting it, and the proof "should be clear and not depend upon inference or argument." *Tide Water Oil Co.*, 29 B. T. A. 1208, 1221; *Helvering* v. *Brooklyn City Railroad Co.*, 72 Fed (2d) 274, affirming 27 B. T. A. 77. Cf. *Lansing McVickar*, 37 B. T. A. 758.

The petitioners computed and reported the gain on the sales made in 1928 according to their theories. The respondent finally determined that the transaction in 1920 was taxable and that to compute the gain in 1920 in order to ascertain the basis under section 113 (a) (6), 1928 Act, "it is necessary to determine the original cost to the shareholders of the corporation stock received in 1915 and the fair market value of the new stock received in 1920" and that for this purpose "the fact that such gain was not reported by or taxed to the respective individuals is immaterial." Whether his present plea of estoppel is inconsistent with these statements need not be determined. If the determination of the respondent of the factors required by law for the ascertainment of the basis to be used for the computation of gain or loss in 1928 is erroneous, estoppel can not be availed of

to justify or perpetuate such errors. Furthermore, the Board stated in *Sugar Creek Coal Mining Co.*, 31 B. T. A. 344, 348, as follows:

\* \* \* As a general proposition, estoppel does not support a belated assessment merely because the taxpayer has omitted the income from his earlier returns and the statute of limitations has barred the correct assessment.

We are of the opinion, and hold, that no estoppel has been shown and that petitioners are entitled to use the bases which we have determined in computing gain or loss upon the sale or disposition of their common stock.

The basis of the 750 shares of common stock owned by McKee, computed in accordance with the statute and the views herein expressed, is $127,150.67, while the basis of the 550 shares owned by Baker is $115,693.29. We show the computation of such bases in the margin.[7] It is necessary, however, to pass upon one more question before actual computation of the gain or loss sustained by the petitioners upon the disposition of the stock can be made.

---

[7]
*Computation of Cost Basis Under Statute*

|  | McKee | Baker |
|---|---|---|
| Cost of stock Penn. Co. 1-1-15 (270 sh.) | (150 sh.) [1] $63,888.88 | (60 sh.) [1] $25,555.54 |
| Capital contributions (earnings taxed to stockholders) | 78,261.79 | 45,272.75 |
| Purchase price 50 shs | | 55,865.00 |
| Total cost of Penn. Co. stock 4-1-20 | 142,150.67 | 126,693.29 |
| Par value Del. Co. stock received 4-1-20 | $150,000.00 | $110,000.00 |
| Par value of Penn. Co. stock exchanged for Del. Co. stock | 15,000.00 | 11,000.00 |
| Excess in par value | 135,000.00 | 99,000.00 |
| (The above excess must be "treated as a gain to the extent that the fair market value of the new stock \* \* \* is greater than \* \* \* the cost of the stock exchanged.") | | |
| Fair market value of new stock | [2] $321,346.72 | [2] $235,654.26 |
| Cost of stock exchanged | 142,150.67 | 126,693.29 |
| To be treated as gain only to the extent of the excess in par value | 179,196.05 | 108,960.97 |
| Statutory basis of Del. Co. stock (cost plus recognizable gain) | 277,150.67 | 225,693.29 |
| Deduct par value of Del. Co. preferred stock received | 150,000.00 | 110,000.00 |
| Basis of Del. Co. common stock received | [3] 127,150.67 | [3] 115,693.29 |

[1] Value 1-1-15—$115,000÷270=$425.9259 per share.

| [2] | Value April 1, 1920 | Number of shares | Value each | McKee | | Baker | |
|---|---|---|---|---|---|---|---|
|  |  |  |  | Shares | Value | Shares | Value |
| Common stock | $443,978.54÷ | 1,943⅓= | $228.4623 | 750 | $171,346.725 | 550 | $125,654.265 |
| Preferred stock | 388,666 66÷ | 3,886⅔= | 100 | 1,500 | 150,000.000 | 1,100 | 110,000.000 |
| Total | 832,645.20 | | | | 321,346.725 | | 235,654.265 |

[3] $127,150.67÷750=$169.5342.
$115,693.29÷550=$210.3514.

It has been found that after the organization of the Delaware Co. in 1920 and before the reorganization in 1928 McKee sold 443⅙ shares and purchased 408 shares of the common stock while Baker sold 348⅔ shares and purchased 367⅙ shares. There is no evidence to enable us to identify the shares sold; hence the "first in, first out" rule must be applied. Cf. *Jacob Epstein*, 36 B. T. A. 109; *Miller* v. *Commissioner*, 80 Fed. (2d) 219. Applying the rule to the sales made by McKee (subject to the right of either party to call our attention to any mathematical errors) we conclude that the gain which should have been reported by him was $257,073.42 instead of the $217,289.67 reported. A similar computation with reference to the sales made by Baker discloses that he should have reported a gain of $157,827.15 instead of the $86,234.62 which he reported.

The petitioners in the three proceedings—and this is the sole issue in Docket No. 58152—contend that, because of the restriction of ownership in officers and employees of the company and in particular because of the trust agreement, the class B stock was not marketable; that therefore the apportionment of the basis of the old stock between the two classes of new stock is impracticable; and that they are entitled to recover the entire cost. While the trust agreement was entered into to limit the ownership of the class B stock to officers and employees of the company, the sale of such stock was not made impossible. Under the trust agreement the trustees were authorized to purchase class B stock and to sell such stock to any officer or employee making application therefor. The trust agreement has 41 signatures, presumably all holders of class B stock. We do not know how many employees the company had at this time, but the number may have been considerably more than 41. Class B stock was sold during 1928, McKee having sold 4,981 shares and Rutledge 470 shares. Additional purchases and sales may have been made by others. The sale price was fixed at $12.66 a share. The situation herein is not comparable to the situation existing in *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481; *Propper* v. *Commissioner*, 89 Fed. (2d) 617; and *Morris D. Kopple*, 35 B. T. A. 1056. In those cases the sale of stock was absolutely restricted for a certain period of time, sale during the period of restriction being impossible. In *H. A. Green*, 33 B. T. A. 824, 830; dismissed, 84 Fed. (2d) 1003, 1004, the Board stated:

* * * the principle of allocation is based on market value. Where there is no market value, no allocation can be made, and the taxpayer is entitled to recover his entire original basis before gain or loss will be recognized on the disposition of the new securities. *Edwin D. Axton, supra.* [32 B. T. A. 613.]

The fact that the class B stock was not available for sale to the public does not prove that it had no market value. The situation

is somewhat analogous to that pertaining to closely held stock. As to the latter the courts and this Board have held that the absence of actual trading or sales in closely held stock or the fact that no sale was made in the open market does not prove that such stock had no market value. *Insurance & Title Guarantee Co.*, 12 B. T. A. 452; affd., 36 Fed. (2d) 842; and *George M. Wright*, 19 B. T. A. 541; affd., 50 Fed. (2d) 727. There was a market here, though limited to officers and employees as evidenced by the sales. Such sales show a demand on the part of the officers and employees for the stock and a supply to meet the demand. In fact the trustees were authorized to meet any demand by a purchase pro rata of the deposited stock. The petitioners do not claim that the class B stock had no fair market value, but merely that it was impracticable to apportion the aggregate value between the two classes of stock.

In *H. A. Green, supra*, it was held that the following provision of article 1567 of Regulations 62 under the Revenue Act of 1921:

\* \* \* the proportion of the original cost, or other basis, to be allocated to each class of new securities is that proportion which the market value of the particular class bears to the market value of all securities received on the date of the exchange.

lays down a principle equally applicable in determining gain or loss under subsequent acts. This principle of allocation was applied by the respondent in determining the gain realized by Rutledge and, in our opinion, it should have been applied. It is equally applicable in apportioning the basis of the common stock held by McKee and Baker in April 1928, between the class A and B stock owned by them.

> *Decision will be entered for the respondent in Docket No. 58152. Decision will be entered under Rule 50 in Docket Nos. 61120 and 61121.*

