Martin V. W. Hall v. Commissioner.
Martin v. W. Hall v. Commissioner
Docket No. 4246.
United States Tax Court
1945 Tax Ct. Memo LEXIS 154; 4 T.C.M. (CCH) 642; T.C.M. (RIA) 45208; June 21, 1945
*154 Petitioner acquired on different dates as a unit an equal number of shares of a bank and a securities corporation. He sold during the taxable year shares of the bank and here seeks an allocation of cost for purposes of determining amount of loss sustained. Held, evidence does not furnish a factual basis upon which to make an apportionment. Barber Securities Corp., 45 B.T.A. 521, followed. Charles A. Roberts, Esq., 165 Broadway, New York 6, N. Y., for the petitioner. J. Richard Riggles, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves a redetermination of a deficiency in income tax for the taxable year 1941, in the amount of $1,846.59. Only that part of the *155 deficiency which relates to the disallowance by the respondent of a loss claimed by petitioner to have been incurred by him upon a sale of certain Chase National Bank stock is in controversy. Findings of Fact Petitioner, Martin V. W. Hall, an individual, resides at Hempstead. New York. His individual income tax return for the taxable year was filed with the collector for the first district of New York. Petitioner was on a cash receipts and disbursements basis. On various dates between 1923 and 1931, the petitioner acquired stock in the Chase National Bank and its affiliate, the Amerex Holding Corporation, which was formerly known as the Chase Securities Corporation, and later as The Chase Corporation. The parties have stipulated that: "The Chase National Bank of the City of New York, hereinafter referred to as Chase Bank, was organized under the National Banking Act in 1877. In 1917, pursuant to an agreement entered into on March 21, 1917, between certain depositing stockholders of the Chase Bank, the Chase Securities Corporation, hereinafter called Chase Securities [Amerex] was organized. A special dividend of $2,500,000 was declared by the Chase Bank and the money was used *156 for the purchase of all of the capital stock of Chase Securities. Under the agreement of March 21, 1917, the stockholders of the Chase Bank deposited their shares of stock of the bank and of Chase Securities with the Bankers Trust Co. and received in exchange therefor a depositary receipt which covered the same number of shares of Chase Securities as of Chase Bank. On January 15, 1930, the agreement of March 21, 1917, was modified so that the stockholders of Chase Bank and of Chase Securities received certificates of stock of the respective corporations, the certificate of stock of Chase Securities being printed on the reverse side of the certificate of stock of Chase Bank. "Under theoriginal agreement, and the modified agreement the shares of one corporation could not be sold or otherwise transferred except in conjunction with the sale or transfer of an equal number of shares of the other corporation. Under both agreements full holding rights with respect to the shares of both corporations were vested in the stockholders and all dividends were payable directly to the stockholders, except that stock dividends should be subject to the agreement. The original agreement was subject *157 to modification by the vote or written consent of 75 percent of the stockholders. The requirement for modification was later reduced to a vote or written consent of two-thirds of the shareholders of each corporation." The number of shares of stock in the Chase Bank and Amerex Corporation purchased, the total unit cost and the dates of acquisition by the petitioner are as follows: Date
Shares
Cost
Remarks
April 30, 1923
20
$ 7,080.00
Purchase
April 6, 1926
10
1,050.00
Subscription
Dec. 8, 1927
6
1,950.00
Subscription
June 19, 1928
7
2,800.00
Subscription
Total through 1928
43
$12,880.00
July 1, 1929
172
Stock split up 5
for 1
215
June 11, 1929
54
5,940.00
Subscription
22.00
Cost of 1/5 sub-
scription right
Aug. 23, 1929
33 5/8
12 1/2% stock divi
dend
July 1, 1931
3/8
30.38
Totals
303
$18,872.38
In each instance certificates for stock acquired were issued by both corporations in the name of petitioner as stockholder of record. The certificates were deposited in the custody of the Bankers Trust Company solely for the purpose of effectuating the restrictive agreement which prohibited the transfer *158 of stock of one of the corporations separately from the stock of the other. All substantial rights and liabilities incident to stock ownership, including double liability on the bank stock and including full voting rights and the right to receive all cash dividends, were vested in the petitioner. The petitioner made no allocation of cost of his original investment as between the shares of stock in the Chase Bank and the Amerex Corporation. On July 21, 1934, the petitioner exchanged his unit certificates for separate shares of stock in the two corporations and, as a result, he received 303 shares of stock in the Chase Bank and 30 3/10 shares of stock in Amerex. On or about December 26, 1941, petitioner sold his 303 shares of Chase Bank stock for the sum of $7,143.74, but retained his shares in the Amerex Corporation. As of the dates of acquisition of the aforesaid depositary receipts, the statements of resources and liabilities of Chase Bank and the balance sheets of Chase Securities show net assets of the respective companies as follows: No. of Shares
Date
Chase Bank
Amerex Corp.
Outstanding
April 30, 1923
$ 42,600,594.96
$14,130,031.17
200,000
April 6, 1926
47,463,078.18
17,967.366.56
200,000
Dec. 8, 1927
80,568,711.59
21,755,409.72
400,000
June 19, 1928
107,201,609.82
30,699,440.60
500,000
June 11, 1929
142,085,237.43
43,871,980.34
610,000
*159 The above statements of Chase Bank are exclusive of good will and other intangibles. Prior to 1930, the books of the Chase Bank were kept on a cash basis and securities were carried on the books at cost, except in some cases they were written down below cost. The statements do not reflect the market values of the Chase Bank assets. The books of the Amerex Holding Corporation were kept on the cash receipts and disbursements basis, and the balance sheets did not include good will of the corporation, nor do they reflect appreciation or depreciation in market values above or below the cost of the underlying assets. The balance sheets do not reflect the market values of the assets. Stated in terms of book net worth per share, based on the number of shares outstanding at each of the dates of acquisition, the comparative values of petitioner's stock in Chase Bank and Amerex were as follows: Percentage of
Date
Chase Bank
Amerex
Total
Bank to total [1]
April 30, 1923
$213.00
$70.65
283.65
75.093%
April 6, 1926
237.32
89.84
327.16
72.539%
Dec. 8, 1927
201.42
54.39
255.81
78.738%
June 19, 1928
214.40
61.40
275.80
77.737%
June 11, 1929
232.93
71.92
304.85
76.408%
*160 The cash dividends paid by the respective companies commencing with the year 1918 and ending with 1934 are as follows: Year
Chase Bank
Amerex
1918
$ 1,600,000.00
1919
1,600,000.00
1920
2,400.000.00
1921
2,600,000.00
$ 750,000.00
1922
3,200,000.00
800,000.00
1923
3,200,000.00
800,000.00
1924
3,200,000.00
800,000.00
1925
3,200,000.00
800,000.00
1926
5,000,000.00
1,200,000.00
1927
5,600,000.00
1,600,000.00
1928
$ 7,700,000.00
$2,000,000.00
1929
12,145,000.00
3,132,500.00
1930
20,587,500.00
6,325,000.00
1931
27,750,000.00
3,700,000.00
1932
16,650,000.00
1933
11,470,000.00
1934
6,857,845.88
Applying the percentage of book net worth per share to the total purchase price or subscription price paid by the petitioner for the stock in the bank and in Amerex at the several dates of acquisition, the cost of the bank stock acquired by him is as follows: Date of
Percentage Attributable
Cost of Share
Acquisition
Total Cost
to Chase Bank
Bank Stock
April 30, 1923
$7,080.00
75.093%
$ 5,316.58
April 6, 1926
1,050.00
72.539%
761.66
Dec. 8, 1927
1,950.00
78,738%
1,535.39
June 19, 1928
2,800.00
77.737%
2,176.64
June 11, 1929
5,940.00
76.408%
4,538.64
$14,328.91
*161 In his income tax return petitioner claimed a long-term capital loss in the amount of $5,857. He reported as his cost basis of the Chase Bank stock the sum of $18,872.38 and a sales price of $7,158.38. Of the resultant reported loss in the amount of $11,714, he claimed 50 percent as a deduction. In this proceeding he has requested us to find that his cost basis is the sum of $14,328.91 and that the net loss thereon is $7,185.17. The respondent has disallowed the claimed loss and is resisting in this proceeding on the ground that petitioner made a single investment and that it is impractical to apportion a part of the cost to the petitioner as between the bank stock which he sold and that of the Amerex Corporation which he still holds. Opinion ARUNDELL, Judge: The sole question before us involves an allocation of cost as between the stock in the Chase Bank and the stock in the Chase Securities Corporation (Amerex) which the petitioner acquired as units. There is no question as to the total cost of the two stocks. The petitioner takes the view that since he has disposed of the Chase Bank stock he should be entitled to deduct the loss which he has sustained. The respondent contends *162 that the stock represents a unit and that there is no practical basis upon which an apportionment can be made. We think it is well established that an apportionment should be made if there be a basis upon which the cost may be satisfactorily apportioned. Regulations 103, Section 19.22(a)-8, [2] "Sale of stock and rights" is the regulatory provision upon which each of the parties relies. Although that section does not appear to be directly applicable, we pointed out in H. A. Green, 33 B.T.A. 824, that for a number of years the respondent's regulations have provided for apportionment of cost under various circumstances and for the deferment of recognition of gain or loss where apportionment was impracticable. [3]
*163 The identical question here presented was before us in Barber Securities Corp., 45 B.T.A. 521, and Orvilletta, Inc., 47 B.T.A. 10, and was also before the Circuit Court of Appeals for the Ninth Circuit in Spreckels-Rosekrans Investment Co. v. Lewis, 146 Fed. (2d) 982, decided in January, 1945. In all three cases it was decided that there was no practical basis for an allocation of the cost of the units representing the shares of the Chase Bank and the Chase Securities Corporation. Andre Decoppet, 38 B.T.A. 1381, aff'd., 108 Fed. (2d) 787, certiorari denied, 310 U.S. 646, rehearing denied, 311 U.S. 725, and Stanley Hagerman, 34 B.T.A. 1158, aff'd., 102 Fed. (2d) 281, involved the same underlying question as between stocks of different corporations. Only in the Hagerman case, supra, were the courts able to find a factual basis which would permit of an allocation. The petitioner takes the view that the case at bar is different from the Barber and Orvilletta cases, supra, due to the fact that the confusion arising from the exchange of Equitable Trust and Equitable Corporation *164 stocks for Chase Bank and Amerex Corporation stocks is not here present. In addition, the petitioner contends that his evidence is direct and substantial and that it does not have the character of being hearsay as was the situation in the Spreckels-Rosekrans case, supra. Petitioner's evidence consists primarily of statements showing the book net worth of the respective companies as of the dates petitioner acquired his shares, and of a showing of the cash dividends which were paid by each of the corporations over a period of years from 1918 to 1934, inclusive. It is clear that the assets of the Chase Bank and of the Amerex Corporation were carried on the books of the respective companies, and were reflected on the balance sheets and statements, at cost except that in some instances they were written down below cost. The assets were not re-valued each day, nor at intervals, to reflect their current market value. The record of cash dividends paid is not comparable to a statement showing the net earnings of the corporations. The evidence here is like that we had before us in Barber Securities Corp., supra, where we held that book figures alone could not be accepted as showing *165 the market value of the shares of the separate corporations. As we have already pointed out, the early regulations and decisions based their allocation of cost on the market value of the securities. Upon authority of Barber Securities Corp., supra, we conclude that petitioner's evidence does not furnish a factual basis upon which a practical allocation can be made. Here, as was stated by the Appellate Court in Spreckels-Rosekrans Investment Co. v. Lewis, supra, the situation is not one which necessitates that a segregation necessarily be effected on the basis of whatever data are available. The loss incurred by the petitioner, if any, can be computed and claimed with accuracy when the balance of the stock is sold. Decision will be entered for the respondent. Footnotes
1. Percentage of the bank's net worth to the total net worth of the two corporations on the dates of acquisition.↩
2. SEC. 19.22(a)-8 Sale of stock and rights. - * * * If common stock is received as a bonus with the purchase of preferred stock or bonds, the total purchase price shall be fairly apportioned between such common stock and the securities purchased for the purpose of determining the portion of the cost attributable to each class of stock or securities, but if that should be impracticable in any case, no profit on any subsequent sale of any part of the stock or securities will be realized until out of the proceeds of sales shall have been recovered the total cost. ↩
3. Article 1567, Regulations 62 (Revenue Act of 1921): * * * the proportion of the original cost, or other basis, to be allocated to each class of new securities is that proportion which the market value of the particular class bears to the market value of all securities received on the date of exchange.↩