ORVILLETTA, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WALKPETE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107202, 107203.   Promulgated June 3, 1942.

*Charles A. Ellis, Esq.,* for the petitioners.
*Lloyd W. Creason, Esq.,* for the respondent.

OPINION.

HILL: These proceedings are for a redetermination of income tax deficiencies for the calendar year 1936 in the amounts of $459.87 and $2,664.26 determined by the respondent against Orvilletta, Inc., and Walkpete, Inc., respectively. The proceedings were consolidated for hearing and opinion.

The only issue is whether or not petitioners are entitled to a loss deduction upon the sale of stock in the Chase National Bank, hereinafter referred to as the Chase Bank. The answer depends upon whether the stock of the Chase Bank and Amerex Holding Corporation (formerly Chase Securities Corporation) have separate cost bases.

The parties filed a stipulation of facts, with certain exhibits attached and incorporated. We adopt such stipulation as our findings of fact and set forth only those deemed material to the issue.

The petitioners are corporations organized under the laws of Delaware and have their principal offices at 601 Wheeling Bank & Trust Building, Wheeling, West Virginia. Both kept their accounts on the cash basis and reported their income and profits taxes for the calendar year 1936 upon the cash receipts and disbursements basis.

The Equitable Trust Co. was organized under the laws of the State of New York. On or about November 7, 1929, by an agreement between the stockholders and the Equitable Trust Co., the Equitable

Corporation of New York was to be and later was incorporated. Thereafter, on or about December 24, 1929, there were transferred to the Equitable Corporation securities of the then market value of about $25,000,000, in return for the issuance of all its capital stock. In due course the holders of the stock of Equitable Trust Co. surrendered their certificates and received in exchange certificates which, on one side, represented shares of the Equitable Trust Co. and, on the other side, a deposit receipt for stock of the Equitable Corporation.

On or about February 11, 1930, petitioners each purchased 75 shares of the capital stock of the Equitable Trust Co., together with deposit receipt certificates for 75 shares of the Equitable Corporation, at a unit cost of $116.25 plus $18.75 commissions, or a total cost to each petitioner of $8,737.50. About February 28, 1930, petitioners each purchased 25 more units at a cost of $116.50 per unit plus $6.25 commissions, or a total cost to each petitioner of $2,918.75. Thus, the total purchase price of the 100 units was $11,656.25.

The shares of the Equitable Trust Co. and the Equitable Corporation were at all times subject to the terms of an agreement which required that any sales or transfers of stock of the corporations be made in units of one share of stock of the Equitable Trust Co. and one share of stock of the Equitable Corporation. Neither stock could be sold or transferred separately.

The stock of the Equitable Trust Co. was quoted and sold on the Bank Stock Market of New York. The quotation on the market for one share of Equitable Trust Co. was the price bid, asked, and paid for a unit of stock consisting of one share of Equitable Trust Co. and one share of Equitable Corporation. Neither the stock of the Equitable Corporation nor of the Equitable Trust Co. was ever quoted or sold on the market apart from the other.

At the close of business on December 31, 1929, the capital stock of the Equitable Trust Co. was $50,000,000. The surplus and undivided profits were $63,611,004.53. At the close of business on March 27, 1930, the capital stock was $50,000,000 and the surplus and undivided profits were $63,916,251.84.

On February 14, 1930, the capital of the Equitable Corporation was $25,000,000 and the profit and loss was $329,025.51, and on February 28, 1930, the capital was $25,000,000 and the profit and loss $454,531.02.

Pursuant to an agreement between certain depositing stockholders dated March 21, 1917, a special dividend of $2,500,000 was declared by the Chase Bank and by corporate action the money was transferred to the Chase Securities Corporation in return for the issuance of all the capital stock pro rata to the stockholders of the Chase Bank. The stockholders then deposited their shares in each corporation with the Bankers Trust Co. and received in exchange a deposit receipt which covered the identical number of shares in the Chase Bank and Chase

Securities Corporation. On or about January 15, 1930, this deposit agreement was modified and the holders of the deposit receipts were issued in exchange therefor certificates of stock in the Chase Bank and the Chase Securities Corporation. The stock of the Chase Bank was printed on one side and the stock of the Chase Securities Corporation on the other side of the same piece of paper.

About June 2, 1930, the Chase Bank and the Equitable Trust Co. were consolidated. The agreement between the depositing stockholders provided as follows:

THE STOCKHOLDERS PARTIES HERETO.

Second: Any stockholder of the Equitable Trust Company may become a party hereto by delivering, or causing to be delivered, to the Depositary for deposit hereunder, on or before April 24, 1930, a certificate or certificates representing shares in said Trust Company of the par value of Twenty Dollars ($20) each, registered or entitled to be registered in his name, properly endorsed in blank and having endorsed thereon the receipt of The Equitable Trust Company of New York as depositary under a certain agreement dated as of November 7, 1929, for an equal number of shares of stock of the Equitable Corporation of the par value of Ten Dollars ($10) each or accompanied by stock certificates, properly endorsed in blank, representing an equal number of shares of said equitable Corporation.

\* \* \* \* \* \* \*

The 100 units of stock of the Equitable Trust Co. and Equitable Corporation were exchanged by petitioners for 80 units of stock of the Chase Bank and the Chase Securities Corporation. The stock certificates of the Chase Bank issued to the petitioners in the exchange bore the following legend:

The agreement of March 21, 1917, as amended, between all the shareholders of the Chase National Bank of the City of New York and Chase Securities Corporation, to which the holder of this certificate, by the acceptance thereof and otherwise, has become a party, provides that no shareholder of either corporation will sell, pledge or otherwise dispose of or transfer, whether voluntarily, by operation of law or otherwise, any share or interest therein in either corporation without at the same time transferring to or vesting in the same party an equal number of shares, or the same interest therein, in the other; \* \* \*

The Chase Securities Corporation stock bore the above portion.

By virtue of the agreement of March 21, 1917, as amended, the stock of the Chase Bank and the Chase Securities Corporation could be purchased or sold only in units. The quotations on the market between May 29, 1917, and June 14, 1934, for a share of the Chase Bank stock constituted the price for a unit of stock in the Chase Bank and Chase Securities Corporation.

By virtue of so-called wash sales made in November 1931 petitioners' original cost or other basis was reduced from $11,656.25 to a stipulated figure of $10,951.59.

On or about May 16, 1933, the name of Chase Securities Corporation was changed to Chase Corporation.

On June 14, 1934, the agreement of March 21, 1917, as amended, was terminated. The certificate of incorporation of the Chase Corporation was changed by eliminating therefrom all provisions preventing the separate sale, pledge, or other disposition of a share of stock without the transfer to the same transferee of a like number of shares of stock in the Chase Bank.

On or about June 14, 1934, the name of Chase Corporation was changed to Amerex Holding Corporation, and about the same date the 80 shares of stock in this corporation held by each petitioner were reduced to 8 shares.

On June 15, 1934, and thereafter, the stock of the Amerex Holding Corporation was quoted separately on the "over-the-counter market" and stock of the Chase Bank was quoted separately on the Bank Stock Market.

In December 1936 petitioners each sold the 80 shares of capital stock of the Chase Bank for $3,754.25. About December 1, 1937, petitioners each sold the 8 shares of stock of Amerex Holding Corporation for $127.22.

The sole issue of this proceeding is whether or not petitioners suffered deductible losses upon the sales of their stock in the Chase Bank. The answer to this question depends upon whether the stock of the Chase Bank had a cost basis separate and apart from the stock of the Chase Securities Corporation, later changed to Amerex Holding Corporation.

Petitioners have attempted to prove separate cost bases by giving the complete factual background of their original purchase of the Equitable Trust Co. and Equitable Corporation stock. They contend that at the dates of purchase of their stock in the Equitable Trust Co. and Equitable Corporation the unit cost price could and should be apportioned. They attempt to show what part of the unit price was paid for each stock by setting forth the book values (securities at market prices) of the Equitable Corporation stock upon the dates of their purchases. Premised upon these book values petitioners, by mathematical calculation complicated somewhat by the wash sales, arrive at a figure of $9,996.56 for the Equitable Trust Co. stock and $955.03 for the Equitable Corporation stock. Then, say petitioners, these cost bases should be carried over to the Chase Bank stock and Chase Securities Corporation stock. Thus, the loss on the Chase Bank stock is the difference between the selling price and that cost basis. Petitioners attempt to avoid the authority of *Barber Securities Corporation*, 45 B. T. A. 521, by pointing out that the taxpayer in that case did not attempt to allocate its cost basis

to the stock of the Equitable Trust Co. and Equitable Corporation. Petitioners place their chief reliance upon *Stanley Hagerman*, 34 B. T. A. 1158; affd., 102 Fed. (2d) 281.

Respondent recognizes the right of petitioners to use their original costs, reduced by the wash sales, as their basis, but he contends that the costs represent one indivisible investment which can not be allocated to the separate parts making up the unit.

We do not believe that petitioners have shown a sound basis for an allocation of the unit cost to the separate shares of the Equitable Trust Co. and Equitable Corporation. Evidence of book value and earning power are sufficient to establish fair market value if there is no evidence that the figures are unreliable. *Benjamin E. May*, 35 B. T. A. 84. However, taking petitioners' figures, we see that this relatively new corporation, Equitable Corporation, had earned approximately 11 percent at the date of purchase of petitioners' last shares. However, the earnings between February 14 and February 28, 1930, were approximately 13 percent. It would seem that the stock of a corporation with such earning power would well exceed the market value of the securities held as assets.

However, assuming that we accept petitioners' alleged allocations, their position is still without merit. Upon the exchange of the Equitable Trust Co. and Equitable Corporation units petitioners received stock in the Chase Bank and Chase Securities Corporation. Petitioners claim that the Equitable Trust Co. stock was exchanged for the Chase Bank stock and Equitable Corporation stock was exchanged for Chase Securities Corporation stock. If this be true it is contrary to the stipulated facts, for in the wording of the stipulation:

* * * the aforesaid 100 units of stock consisting of said 100 shares of the capital stock of The Equitable Trust Company of New York and of said 100 shares of the capital stock of The Equitable Corporation of New York were exchanged by each of these petitioners for 80 units of stock consisting of 80 shares of the capital stock of the Chase National Bank of the City of New York and of 80 shares of the capital stock of Chase Securities Corporation.

Ignoring this part of the stipulation, we refer to the documents attached and incorporated therein. From these we see that there was no real separation and that what was contemplated was an issuance of units of Chase Bank stock and Chase Securities Corporation stock at a ratio of 8 to 10 for the units of the Equitable Trust Co. and Equitable Corporation stock. Neither Chase Bank nor Chase Securities stock was transferable separately. The quotations on the market were for a unit of one share of Chase Bank stock and one share of Chase Securities stock. The legend which each certificate bore shows further that the stocks were inseparable. Therefore,

even though it were possible to determine separate cost bases for petitioners' Equitable Trust Co. and Equitable Corporation stocks, they were exchanged for inseparable units. We are unable to determine from the record that the cost of the Chase Bank stock was the Equitable Trust Co. stock and the cost of the Chase Securities stock was the Equitable Corporation stock.

Moreover, if we were able to so determine, we would be faced with a still further dilemma. It was stipulated that in November 1931 the original cost bases were reduced by certain so-called wash sales. Even if the Chase Bank and Chase Securities stocks had had separate cost bases, we would be unable to determine which of those bases was so reduced, or, if both were reduced, what amount of the reduction is allocable to each. It is inconceivable that the reduction on both would be in exact proportion to the alleged cost basis of each.

We find it impossible to determine separate cost bases for the component parts of the inseparable units of Chase Bank and Chase Securities stock. *Barber Securities Corporation, supra;* cf. *André deCoppet*, 38 B. T. A. 1381; affd., 108 Fed. (2d) 787; *Moore* v. *Hoey*, 31 Fed. Supp. 478. Thus, petitioners can only compute the gain or loss after the disposition of both parts of the unit. *H. A. Green*, 33 B. T. A. 824; dismissed, 84 Fed. (2d) 1004.

*Decisions will be entered for respondent.*