George E. Booth v. Commissioner.
Booth v. Commissioner
Docket No. 105161.
United States Tax Court
1944 Tax Ct. Memo LEXIS 355; 3 T.C.M. (CCH) 176; T.C.M. (RIA) 44057; February 26, 1944
*355 Walter Bachrach, Esq., 231 S. La Salle St., Chicago, Ill., for the petitioner. Harold H. Hart, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding is for redetermination of income taxes for the calendar year 1937 in the amount of $3,775.80. The issue is whether petitioner is entitled to any deductible loss in 1937 upon his assertion that certain stock became worthless in that year. The case was submitted on a written stipulation of facts, facts orally stipulated into the record, certain exhibits and oral testimony. The stipulated facts are adopted as findings of fact. Those findings which follow are either stipulated or found from the evidence. Findings of Fact The petitioner is an individual residing at 141 West Jackson Boulevard, Chicago, Illinois. The return for the period involved was filed with the collector of internal revenue for the first district of Illinois. At the time of the death of Perley Lowe on July 29, 1924, he owned 350 shares of the stock in the National City Bank of Chicago. The stock at that time had a value of $172 per share. In the course of the administration of his estate these shares were exchanged for *356 350 shares of the capital stock of the National Bank of the Republic of Chicago. Upon the settlement of the Perley Lowe estate in December 1924, these shares were distributed to Eliza Lowe, his widow. On December 26, 1928, Eliza Lowe made a gift of 50 shares of the capital stock of the National Bank of the Republic of Chicago to the petitioner. The fair market value of those shares on that date was $245 per share. On December 26, 1929 the petitioner received as a gift from Eliza Lowe an additional 50 shares of the same capital stock. The fair market value of the shares on that date was $151 per share. Subsequently, but prior to August 29, 1931, the petitioner acquired by purchase an additional 15 shares of the same stock at a total cost of $420.25 per share. The petitioner then held a total of 115 shares of the capital stock of the National Bank of the Republic of Chicago. On August 29, 1931 the petitioner exchanged these 115 shares, in a statutory reorganization, for the following: (a) 13 units each consisting of one share of stock of the Central Republic Bank and Trust Company and a beneficial interest in one share of stock of the Central Republic Company, its security affiliate, *357 and (b) 115 shares of National Republic Stockholders' Trust. Each certificate of stock of the Central Republic Bank and Trust Company issued on August 29, 1931, as a component part of the unit, was endorsed with a restrictive legend. This legend, in substance, provided that the acceptance of the certificate by the holder constituted his agreement to be bound by the terms of a certain trust agreement. The trustees, under this agreement, had the right to hold stockholders' shares in the Central Republic Company, an investment affiliate. The legend also restricted the holder's right to sell or transfer his interest in the trust without a similar transfer of the bank shares. The 115 shares of National Republic Stockholders' Trust also received in the exchange were not subject to restrictions with respect to the sale or transfer thereof. On or about November 19, 1932, the Central Republic Bank and Trust Company changed its name to the Central Republic Trust Company. New certificates were not issued but the old certificates were stamped with the new name if presented to the Bank. The petitioner never presented his old certificate for stamping but at the date of the hearing herein still *358 held and owned the old certificate. Pursuant to the Banking Act of 1933, the Bank and its security affiliate were divorced. Thereupon the petitioner presented his certificate representing 13 shares of bank stock to the Bank and the restrictive endorsement was stamped "cancelled." At the same time the petitioner received a new certificate evidencing his ownership to 13 shares of the capital stock of the Central Republic Company, the former security affiliate. The petitioner is still the owner and holder of these 13 shares. During the year 1937, the taxable year, the quoted price range for shares of the Central Republic Company stock was from $6 to $28 per share. On November 21, 1934, the Auditor of Public Accounts of Illinois appointed a Receiver for the Central Republic Trust Company (formerly the Central Republic Bank & Trust Company). This receivership has not been concluded. Prior to the appointment of a receiver the Reconstruction Finance Corporation loaned vast sums of money to the Central Republic Bank and Trust Company (name later changed to Central Republic Trust Company) which loans were secured by practically all of its assets. Also on November 21, 1934, the Reconstruction *359 Finance Corporation instituted a suit against the stockholders of the Central Republic Trust Company to recover the statutory liability imposed by the law of Illinois upon holders of bank stock in cases of default in the bank's obligations. The petitioner was named as a defendant in that suit. On November 7, 1936, the District Court of the United States, for the Northern District of Illinois, rendered its decision determining that the stockholders of the Central Republic Trust Company were subject to the statutory liability. On May 1, 1937, a decree was entered adjudging the petitioner liable in the sum of $1,300 upon the 13 shares which he held in that bank. The petitioner discharged this liability by payment to the Receiver of the sum of $1,310.85, which included interest and costs. The petitioner on his 1937 income tax return took and was allowed the deduction of that amount as a loss. The decree entered on May 1, 1937 in the suit by the Reconstruction Finance Corporation, inter alia, contained the following: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT: "FIRST: Any defendant against whom liability is adjudged in the decree entered in this cause on May 1, 1937, may *360 pay to the said Receiver the amount of liability so adjudged against such defendant, together with the interest thereon to the date of payment and costs and shall not be required to pay any further interest irrespective of whether or not any appeal from such decree is taken. * * * * *
"THIRD: In the event that any defendant prosecutes an appeal from the said decree resulting in a modification or reversal thereof by the Circuit Court of Appeals or the United States Supreme Court, the benefit of such modification or reversal shall (subject to the provisions of paragraph Fifth hereof) inure to the benefit of the other defendants who have paid to the Receiver appointed in this cause the amounts respectively adjudged against them by said decree, as if they had participated in such appeal, to the extent that such modification or reversal determines issues which would affect their respective liabilities and which they could have respectively raised on appeal, but only to that extent. * * * * *
"FIFTH: Except pursuant to further order of the Court, entered after hearing upon notice and for good cause shown, no distribution shall be made by the Receiver herein pending the time for or *361 during any appeal to or other proceeding in the Circuit Court of Appeals of this Circuit from or concerning said decree, nor pending the time to apply for or during any review by or other proceeding in the Supreme Court of the United States of or concerning any order affirming, modifying or reversing said decree." * * * * *
Certain defendants, other than the petitioner, filed appeals from this decree. The Circuit Court of Appeals for the Seventh Circuit, on February 20, 1939, affirmed the decision of the District Court (17 Fed. Supp. 263; 102 Fed. (2d) 305). The Supreme Court of the United States on October 9, 1939 denied certiorari (308 U.S. 558). No separate cost basis was established for the 13 shares of the capital stock of the Central Republic Trust Company owned by petitioner throughout the taxable year 1937. The 13 units consisting of 13 shares of stock in the Central Republic Trust Company and 13 shares in the Central Republic Company which petitioner owned throughout the taxable year 1937 did not become worthless during that year. Opinion In his income tax return for 1937, the taxable year, *362 petitioner claimed, inter alia, a loss by reason of his 13 shares of stock in Central Republic Bank and Trust Company (name changed to Central Republic Trust Company), hereinafter called "Central", having then become worthless. The validity of this deduction rested on his establishing a basis for that stock as distinguished from his basis for the unit of which that stock was a part and that of the National Republic Stockholders' Trust. See DeCoppet v. Helvering, 108 Fed. (2d) 787, affirming 38 B.T.A. 1381; Barber Securities Corporation, 45 B.T.A. 521; Orvilletta, Inc., 47 B.T.A. 10. Respondent disallowed this deduction, stating in his notice of deficiency: * * * it does not appear that the interest which you acquired, as a unit, in the Central Republic Bank and Trust Company and in the Central Republic Company became worthless during that year. Furthermore, it does not appear that the cost or other basis of the said interest which you acquired, as a unit, in the Central Republic Bank and Trust Company and in the Central Republic Company is susceptible to *363 allocation as between the two corporations. In any event, it cannot be determined that you sustained any loss during the year 1937 by reason of the stock of Central Republic Bank and Trust Company, name changed to Central Republic Trust Company, having become worthless, and the deduction taken by you on your return for that year in the amount of $20,379.34 has not been allowed. In his petition basing these proceedings, petitioner assigned that disallowance as error but pressed his original position as taken in his return, without more. He now concedes on brief that his 13 shares of Central stock and his 13 shares of Central Republic Company stock composed 13 units, each consisting of one share of each of those stocks, and that apportionment of his basis as between those stocks is impracticable. See DeCoppet v. Helvering, supra;Barber Securities Corporation, supra;Orvilletta, Inc., supra. This concession, which is in accord with the facts as we have found them, concludes petitioner on his original position since proof of his basis for his 13 shares of Central stock is a necessary premise to his *364 deduction of any loss on the same. DeCoppet v. Helvering, supra;Barber Securities Corporation, supra;Orvilletta, Inc., supra.See also Walter M. Hort, 39 B.T.A. 922; affd., 112 Fed. (2d) 167; affd., 313 U.S. 28. Assuming, however, that such basis had been established, the same conclusion would follow since this record falls far short of establishing that the 13 shares of petitioner's Central stock became worthless in 1937. Revenue Act of 1936, section 23(e). [1]Mahler v. Commissioner, 119 Fed. (2d) 869; cert. denied, 314 U.S. 660. The only evidence to which *365 petitioner points as supporting his allegation that this stock became worthless in the taxable year 1937 is his payment in that year of $1,310.85 in discharge of his statutory liability as a holder of those shares. But this liability was that set up by Illinois law [2] and was based not upon insolvency of the bank but upon a mere failure of the bank to meet an obligation to its creditor. Assuming, however, that the suit to establish such liability, the decision fixing that liability, the decree thereon, or the payment of the same, might be material, it would hardly seem that payment, alone, on this record necessarily established worthlessness of the stock. It should be remembered that it is complete loss of value with which we are concerned at the moment. Thus there is no evidence of the actual value of the net assets of Central in 1937 or prior thereto. The suit to establish the stockholders' liability, including that of petitioner, was instituted in 1934. The court decided that liability in 1936. On this record, we think petitioner has failed to establish that his Central stock became worthless in 1937. See Mahler v. Commissioner, supra.
*366 Passing this original position of petitioner, however, we note he now apparently urges that in spite of the impracticability of proving his basis for Central stock, he is entitled to a loss on the 13 units, consisting of his 13 shares of Central and his 13 shares of Central Republic Company, its former security affiliate - measured by his basis for those units. His present position seems to be that his entire basis for his 115 shares of the National Bank of the Republic of Chicago, which he exchanged in 1931, was represented by these 13 units of Central and Central Republic Company stock, and none of it by the 115 shares of National Republic Stockholders' Trust stock which he also received in that exchange. On this premise, he then argues that he is entitled to a loss of this entire basis in 1937 on the ground that these units, as such, became worthless in that year. To support this, he urges in effect that the fair market value of his 13 shares of Central Republic Company stock varied from $6 to $28 per share throughout 1937. And, since he paid $1,310.85 in that year in satisfaction of his statutory liability as the holder of 13 shares of Central stock, thus in effect increasing *367 by that much his investment in the units, it became apparent, for the first time in 1937, that these units were in fact worthless. Petitioner did not attempt to amend his pleadings setting up this new position. Whether this was necessary, however, we do not decide. Passing the frailties that may exist in the factual premises upon which this position necessarily rests, we think the conclusion must be against petitioner in any event. The effect, as we have stated, of this argument is to treat petitioner's payment of $1,310.85 in satisfaction of his liability as a stockholder in Central, as an additional investment in the units of which his Central stock was a part. But petitioner has already, in his return for the taxable year 1937, claimed and been allowed the deduction of that amount as a loss. This action of the respondent is not in issue. Certainly petitioner can not justify the deduction of this amount as a loss and at the same time use it as an additional capital investment. But, assuming that he could change his position and so treat it, what would the situation be? Petitioner would then have increased his basis for the stock units in question but he would still own all *368 of the shares composing that unit. Thirteen of those shares, to wit: those in the Central Republic Company, were worth throughout 1937 at least $6 to $28 per share. That amount, though small, is too large, we think, to be considered negligible. Petitioner does not even suggest that it is. Thus, petitioner would still possess an asset representing his increased basis. And that asset, though shrunk and depreciated in value, would not be worthless. See Ewing-Thomas Converting Co. v. McCaughn, 43 Fed. (2d) 503; cert. denied, 282 U.S. 897; Davidson Grocery Co. v. Lucas, 37 Fed. (2d) 806. Since, under the applicable statute no such partial loss is deductible, petitioner is entitled to the deduction of none in 1937. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) * * * (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *.↩
2. Smith & HurdStats. Ill. C-16-1/2 § 6. Smith & Hurd Stats. Constitution Art. 11, § 6↩.