Nettie M. Adams v. Commissioner.
Adams v. Commissioner
Docket No. 104248.
United States Tax Court
1944 Tax Ct. Memo LEXIS 342; 3 T.C.M. (CCH) 189; T.C.M. (RIA) 44065; February 29, 1944
*342 Harry Thom, Esq., for the petitioner. Harold H. Hart, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves income tax deficiency for the fiscal year ended May 31, 1938 in the amount of $531.09. The only issue is whether the petitioner is entitled to deduct a loss based upon the liquidation of the Continental Illinois Company. Petitioner acquired her interest in that company as parts of units consisting of stock in that company and shares of the Continental Illinois Bank and Trust Company. A stipulation of facts with certain exhibits was filed, and oral testimony was presented. The facts stipulated are adopted as findings of fact. Others that appear hereinafter are found from the other evidence. Findings of Fact The petitioner is an individual. The return for the period involved was filed with the collector of internal revenue for the first district of Illinois. The return was filed on the cash receipts and disbursements basis. On March 10, 1921, the petitioner acquired 110 shares of the Illinois Trust and Savings Bank, at a cost of $38,775. On January 18, 1923 that bank and Merchants Loan & Trust Company were consolidated *343 under the name of Illinois Merchants Trust Company and the stockholders of each received one share of stock in the consolidated bank for each share of stock owned in the constituent banks. On June 2, 1921, she acquired 12 shares of the capital stock of the Corn Exchange National Bank of Chicago at a cost of $4,194. On February 1, 1929, she purchased 19 shares of the capital stock of the Illinois Merchants Trust Company in connection with a consolidation of that bank with Continental Illinois Bank and Trust Company, at a cost of $4,863.50. On September 27, 1924, Illinois Merchants Trust Company acquired all the assets of the Corn Exchange National Bank. Each stockholder of the latter bank then received for each share owned in that bank one share of the stock of the Illinois Merchants Trust Company (hereinafter called "Illinois"). After that petitioner owned 141 shares of stock in the latter company. Continental Illinois Bank & Trust Company, a State bank, (hereinafter referred to as "Continental") was a corporation resulting from the merger and/or consolidation of other banks and an investment affiliate of one of them, in none of which did petitioner own any stock. In March 1929, *344 a planned consolidation of Continental and Illinois was effected under the name of the former. In this transaction petitioner received 282 shares of stock in Continental in exchange for her 141 shares of stock in Illinois. As contemplated by the aforesaid plan, a security company to be affiliated was organized under the name of Continental Illinois Company. On March 18, 1928, by means of various book entries, the security affiliate received assets, formerly owned by the consolidating companies, having a value of $20,000,000, for which capital stock was issued. This value was determined by a committee appointed by the trustees acting under Deposit Agreements. All the stock of the security affiliate was issued in the names of the trustees for the stockholders of Continental acting under a Declaration of Trust dated February 7, 1929. No person could act as trustee under this Declaration who was not a director of one of the consolidated banks, or after consolidation, of the consolidated bank, or its successor. A trustee who ceased to be a director automatically ceased to be a trustee. The trustees had extensive powers. Dividends received by them were to be either distributed to the persons *345 beneficially interested or turned over to the bank for distribution to such beneficiaries, who were of necessity the same persons as the bank's own stockholders. The trust could be terminated by an affirmative request of at least two-thirds of the capital stock of the consolidated bank. During the time the stock of the security affiliate was held under the trust no person beneficially interested therein could transfer the same or any part thereof except by a transfer of his ownership of the stock of Continental. The only evidence of this beneficial interest was an endorsement appearing on the reverse side of the bank stock certificate. On October 10, 1932, Continental changed to a national bank association pursuant to section 5154 of the Revised Statutes of the United States, and the stockholders exchanged their shares for the same number of shares of the new Continental Illinois National Bank and Trust Company. On December 30, 1931, the trustees of the security affiliate reduced its capital stock from $20,000,000 to $2,000,000. Pursuant to the Banking Act of 1933, requiring banks to divorce their security affiliates, a resolution was approved to liquidate the Continental Illinois *346 Company. On December 20, 1933, the trustees approved a form of Certificate of Beneficial Interest and authorized the Illinois National Bank and Trust Company (successor to Continental), upon the surrender of a share of its stock, to issue for each such share a Certificate of Beneficial Interest equal to 1/750,000 undivided interest in the security company. A new certificate of bank stock was issued without bearing any restrictive endorsement. The petitioner surrendered her 282 shares of the bank stock. She received in exchange 282 shares of bank stock and 282/750,000 Certificates of Beneficial Interest in the security company. After the exchange the common stock of the bank and the Certificates of Beneficial Interest in the security company were separately bought and sold on the "over-the-counter" market in Chicago, Illinois. On March 13, 1934, the Continental Illinois Company filed with the Secretary of State of Illinois a statement of intent to dissolve and on January 20, 1939, it filed Articles of Dissolution pursuant to section 80 of "The Business Corporation Act" of Illinois. In connection with the proposed consolidation, on March 18, 1929, a committee was appointed to value *347 the assets of each bank to determine the amount of stock each group of stockholders was to receive in the consolidated bank. The committee determined the value of the net assets for such purpose to be $164,060,156.42. This figure includes the $20,000,000 of securities which became the assets of the security affiliate, Continental Illinois Company. The first day, subsequent to date of the separation of the unit on December 20, 1933, on which there were actual sales of the Certificates of Beneficial Interest, there were sales of the Certificates at $3.25 and sales of the consolidated bank stock at $24 low and $26 high. The petitioner, in arriving at a figure to represent the cost of her Certificates of Beneficial Interest in the security company for the purpose of determining her loss for deduction in her income tax return for the period involved, allocated 12.191 per centum of the entire cost of her original investment of $47,832.50. The petitioner obtained this percentage figure of 12.191 from the consolidated bank. It is a computation based upon the book value of the stock of the consolidated bank and the book value of the stock of the security affiliate as of the consolidation in *348 March 1929. Using the percentage figure of 12.191$ the petitioner determined the cost of her Certificates of Beneficial Interest to be $5,831.26. From March 27, 1934 until January 5, 1938, when the final liquidating dividend was paid on the Certificates of Beneficial Interest, the petitioner received liquidating dividends in the total amount of $1,698.96, which she has credited to her above proposed basis for her Certificates of Beneficial Interest. The petitioner continues to own the 282 shares of the capital stock of the Continental Illinois National Bank and Trust Company. The cost or market value of the Certificates of Beneficial interest in the Continental Illinois Company at the time of their receipt is capable of ascertainment. A practical method is to apportion the total cost of the original unit by applying thereto the ratio that the market value of the total assets of that unit bears to the market value of the assets allocated to the Continental Illinois Company at the time of its incorporation. This results in a percentage figure of 12.191. The cost of the Certificates of Beneficial Interest in the Continental Illinois Company to the petitioner on March 18, 1929 was $5,831.26. *349 Opinion The issue is whether the petitioner suffered deductible losses upon the liquidation of the Continental Illinois Company, in which she held 282/750,000 Certificates of Beneficial Interest previously acquired as part of an inseparable unit consisting of that interest and 282 shares of stock of Continental. The answer depends on whether the record discloses what basis the Certificates of Beneficial Interest had in petitioner's hands, separate and apart from the stock of Continental still held by her. The petitioner claims she has brought herself within the rule of the case of Stanley Hagerman, 34 B.T.A. 1158; affd., 102 F.2d 281. The petitioner has attempted to establish such separate cost basis by tracing the original purchases down through various reorganizations, consolidations, and capital stock increases and reductions to the eventual separation of the component parts pursuant to the Banking Act of 1933. We have set forth in a general way this historical background in our findings of fact. No purpose would be served by its repetition or expansion. We pass to the critical transaction of the final consolidation *350 on March 18, 1929, relied upon by the petitioner as the focal point for establishing the cost basis used in her computation. Under this last consolidation the petitioner received the shares of the consolidated bank and her Certificates of Beneficial Interest in the security affiliate, concededly as an inseparable unit. The committee, appointed under the plan to value the assets of each of the banks for the purpose of determining the amount of stock each group of stockholders was to receive in the consolidated bank, determined the net value for such purpose to be $164,060,156.42. Securities of the book value of $20,000,000 were transferred as assets to the security company and the balance remained as assets of the consolidated bank. The bank, in arriving at the percentage figure to represent the cost of the bank stock to be allocated to the Certificates of Beneficial Interest, divided the $20,000,000 book value of the assets of the security company by the total assets of $164,060,156.42, resulting in the percentage figure of 12.191 used by the petitioner in determining the cost to her of the Certificates of Beneficial Interest. The petitioner contends that this method of apportionment *351 of cost of the component parts is practicable. She also argues that the actual sales of the bank stock and the Certificates of Beneficial Interest after the separation of the component parts in 1933 show a comparative ratio of value and furnish a practicable method of fairly apportioning the cost of each part of the unit as of March 18, 1929. In the Hagerman case, supra, we laid down the rule that where the evidence established that it was practicable to apportion the cost of the component parts of an investment acquired as a single unit such apportionment should be made. We have not departed from that principle. The respondent argues that the Hagerman case, supra, must be limited to its own facts and, when so viewed, is not controlling here. He urges that our decisions in the Andre De Coppet and Henry M. Wise cases, 38 B.T.A. 1381, which were affirmed by the Second and Third Circuit Courts of Appeal in 108 F.2d 787 and 109 F.2d 614, respectively, and our decision in Orvilletta, Inc., 47 B.T.A. 10, are more nearly analogous and should *352 be followed. We do not regard these cases relied upon by the respondent as departing from the principle established in the Hagerman case, supra. In the DeCoppet case, supra, we pointed out that there had never been any actual separation of the units as was the fact in the Hagerman case. In the Orvilletta case, supra, while recognizing the rule that there may be an apportionment where practicable, we found under the evidence that such an apportionment was not practicable. Here there was a separation of the component parts of the original unit when Continental Illinois Company, the security affiliate, was created. We have found that an apportionment is practicable as of that time. That occasion here corresponds with the acquisition of the entire unit in the Hagerman case which was the event upon which the apportionment was made there. The method used by the petitioner here for establishing a basis for apportionment of her cost for the component parts of the units, while not furnishing an accurate and precise value for them, does, we think, furnish a practical basis. The committee method of valuing assets in a consolidation such as was effected *353 here is not to be treated lightly. Owing to sudden illness, the petitioner was unable to produce as a witness one of the committee selected to value the assets, and in lieu thereof the parties stipulated that a committee valued the assets to be allocated between the bank and its security affiliate. We ought not to assume that a committee, chosen to make an appraisal, would be governed by other than actual values of the assets in question. Significant also, and perhaps to a degree corroborative of the value, are the quotations on the public market of the component parts of the unit when their separate sale was permitted. These quotations indicate that the public regarded the value of the separate units as approximately of the same ratio of value as the assets allocated to each at the time the security affiliate was established. Under the facts here presented, we sustain the petitioner upon the authority of the Hagerman case, supra. Decision will be entered under Rule 50.